NORTHERN INDIANA POWER COMPANY *v.* CASTOR.

[No. 12,389. Filed May 18, 1927. Rehearing denied June 25, 1928. Transfer denied December 14, 1928.]

*James W. Fesler, Harvey J. Elam, Howard G. Young, Irving M. Fauvre, Thomas E. Kane* and *William Robison,* for appellant.

*Floyd G. Christian, Ralph H. Waltz, Thomas H. Ryan* and *Brenton A. Devol,* for appellee.

THOMPSON, J.—This is an action to recover damages alleged to have been caused to farm land located on White river near Noblesville, by the construction of a dam across said river below said farm.

After the filing of the original complaint on September 28, 1922, which complaint was in two paragraphs, the Northern Indiana Power Company, which had purchased the dam from the Noblesville Heat, Light and Power Company, was substituted as defendant. The appellee, on April 30, 1923, filed an amended second paragraph of complaint and dismissed the first paragraph of the original complaint.

The amended second paragraph of complaint alleges in substance, that appellant is a corporation engaged in the business of manufacturing and furnishing heat, electricity and power for domestic and commercial purposes, and that it maintains electric and power plants and other apparatus, including a power plant four miles north of the city of Noblesville, at the village of Clare; that appellee is the owner in fee simple of certain described lands along and near White river about a mile and a half up stream from appellant's dam; that White river in that county is a natural watercourse and carries a large volume of water, and that, in the vicinity of appellee's land, the river's banks are low and the surrounding lands, including appellee's, are level and low; that about 600 acres of appellee's land is bottom land and has been heretofore

used for the raising of corn, hay, oats, wheat and other
such farm products as are grown in that vicinity; that
said land lies about five miles from Noblesville and one
and a half miles from the village of Clare, and abuts upon
and is close to improved highways, and is in a good farm-
ing location in a rich valley, and was, before the injury
herein set forth, a rich, fertile farm and of the approxi-
mate value of $200,000 dollars; that in 1922, appellant
constructed and erected, and has since and does now
maintain, below appellee's land, a large dam across
White river, the exact dimensions of which are unknown
to appellee, but which is of the height of eleven feet above
the bottom of said river and ten feet above the low-
water mark, and said dam is so constructed that flash-
boards may be set up on top of said dam so as to raise the
water an additional eighteen inches above the top of the
dam; that said dam extends some 400 feet entirely across
the bed of said river and is about eight or ten feet thick
and permanently constructed of cement, stone, gravel
and other materials; that appellant has also erected and
now maintains a power plant which extends thirty or
forty feet into the river; that appellant has also built
levees adjacent to said dam and of the same height and
thickness, and that all of said works are intended to be
permanently maintained by appellant; that, by said dam
and apparatus at the top thereof, the appellant is able to
raise the water in said river about twelve or thirteen feet
above low-water mark and appellant does keep said
water raised and maintained about ten and one-half feet
above low-water mark, and thereby obstructs the flow
of water; that the erection of said dam was unlawful and
was carried out without the consent of appellee and with-
out the payment or tender of damages to him; that ap-
pellee's said land was formerly drained by a system of tile
drains, over 4,000 feet of which are now below the level of
said dam and are rendered useless by the backing up of said

water; that, before the erection of said dam, appellee maintained a ford across White river from the main body of his land to a fifty-acre tract on the other side of the river, and that the only way of reaching said fifty-acre tract was by way of said ford; that since the erection of said dam and the backing up of said water, said ford is useless and appellee is unable to farm said fifty-acre tract of land. Judgment was demanded for $150,000.

Appellant filed answer in two paragraphs, the first paragraph being a general denial, and the second paragraph alleging, in substance, as follows: That appellant had a right to maintain the dam complained of, without paying damages to anybody, and to overflow appellee's lands to the extent complained of, by virtue of its ownership of lands adjacent to the dam, and by virtue of the fact that, in approximately the same location of the present dam, three different dams had been built and maintained by their various owners from the year 1830 until 1903, at which time the third dam was damaged by floods and was out of use and did not back up the water to its present extent between the years 1903 and 1922; that the present dam was put in operation and backed up the water to its present extent on November 3, 1922; that appellant is the owner of the sites of each of the previous dams and has succeeded to the rights pertaining thereto; that appellee's land had been flooded to substantially the same extent to which it is now flooded continuously since 1875, except for the period from 1903 to 1922, but that, during all of said period, the appellant and its predecessors were claiming the right to maintain a dam at substantially the location of the present dam and to flood the lands of appellee to the extent to which they are flooded by the present dam, for the purpose of developing power, and that the right was not confined to any particular mill or industry.

There was a change of venue to the Clinton Circuit

Court, and appellee filed a reply of general denial to appellant's second paragraph of answer. There was a jury trial and a verdict of $28,000 for appellee. Appellant then moved for judgment on answers to interrogatories by the jury, which motion was overruled. Appellant's motion for a new trial was overruled, and exception taken. Judgment was then rendered for appellee for the amount of the verdict.

The errors relied upon for reversal are: (1) The overruling of appellant's motion for judgment; and (2) the overruling of appellant's motion for a new trial.

Appellant earnestly contends that its motion for judgment should have been sustained, and insists that the evidence in the case shows, without contradiction, that appellee had no cause of action at the time the suit was commenced.

The record shows that appellant appeared to the amended second paragraph of complaint without any objection whatever, and that it filed an answer and went to trial upon the issues thus presented. No question was raised until after the verdict was returned, when appellant filed a motion for judgment on the answers to interrogatories, notwithstanding the general verdict. We hold that appellant cannot now complain for the first time and try to raise the question of the statute of limitations which was not raised in the court below. The court did not err in overruling the motion for judgment on the answers to interrogatories. See *Pitzele* v. *Reuping* (1903), 32 Ind. App. 237, 68 N. E. 603; *Jordan* v. *Indianapolis Water Co.* (1902), 159 Ind. 337, 64 N. E. 680.

Appellant, under its special answer, claims the right by prescription to overflow appellee's land.

In *Peterson* v. *McCullough* (1875), 50 Ind. 35, the court said: "To acquire a right by prescription, there must be an actual enjoyment. Prescription acquires for the

party precisely what he has possessed, and nothing more, and in proving a prescription the user of the right is only the evidence of the extent to which it has been acquired."

In *Mitchell* v. *Parks* (1866), 26 Ind. 354, the court said: "The extent of the right is to be measured by the extent of the appropriation, and the use of the water for a period requisite to establish a conclusive presumption of the right. . . . The right is confined to the extent and mode of enjoyment during the twenty years."

In *McGeorge* v. *Hoffman* (1890), 133 Pa. 381, 19 Atl. 413, it is said: "It is certainly true that the presumption of a grant, arising from long-continued use, applies to the land occupied, and not to the dam, and the extent of the easement is measured by the extent to which the servient tenement is overflowed."

In Farnham, Waters and Watercourses §1804, it is said: "Since the acquisition of prescriptive right depends upon actual invasion of the right of the upper owner, it will extend no further than such invasion is extended. The right is measured by the amount of water which has been kept standing upon the upper property, and not by the height of the dam, or the facilities which the lower owner had to cast water across the boundary line."

In *O'Brien* v. *Enright* (1867), 15 Weekly Reporter (Eng.) 637, it was held that: "A prescriptive right gained by constructing a weir and penning back the water of a stream is no greater than the user; and where during the time of acquiring such prescriptive right, no injury is inflicted upon other riparian owners, the prescription cannot be continued after it floods or injures adjoining lands."

Washburn, Easements p. 15, says: "A question of this kind came before the court in New Jersey, involving the inquiry as to how a prescriptive right to flow land may be acquired, and how the extent of the right may be measured. It is said that in

analogy to the statute of limitations, twenty years is adopted as the period of prescription requisite for gaining an easement. The enjoyment of whatever is claimed must be continuous to the full extent claimed, and for the whole term. Possession, therefore, of a part, though accompanied with a claim for the whole, would not be sufficient, and an omission for one or two years within the twenty would prevent the prescription being effective. In applying these principles to flowing back water by means of a dam, the prescription is not for the dam, but for the right to flow by means of it, and the extent to which this is enjoyed is the limit of the prescriptive right gained thereby. And this flowing must be continued for twenty years, and it only extends as far as the land of the other party was habitually flowed. The height of the dam is not the measure of the prescription. But where the dam is a permanent structure, it is neither necessary to the gaining of a right to flow back water by it, that the water should be kept up to its full capacity, nor that it should be kept in perfect repair. It is the height of the water, as ordinarily and usually kept in the dam when kept in repair as dams are kept for profitable and economical use, that will fix the height required by prescription. If a dam is permitted, for one or two years, to be out of repair, so as not to injure the land above it, that time will not be counted in the prescription; the prescription is interrupted and must commence anew."

In *Griffin* v. *Bartlett* (1875), 55 N. H. 119, the syllabus was as follows: "B., having gained by prescription a right to flow G.'s meadow, from October to June of each year, to the height of his ancient dam, repaired and tightened the dam, erected an additional mill, put in new improved machinery consuming less water, and claimed the right to operate the mills as thus constructed, provided he did not raise the water above the tip of his ancient dam. *Held*, that he could not flow G.'s land in

a different manner nor to a greater extent than he had formerly done."

As to whether or not appellant had claimed the right to and did overflow appellee's land at the time of the commencement of this action was a question of fact which was submitted to the jury under the issue raised by the special answer. There were many witnesses on each side of this case, and on the foregoing issue, the jury found against appellant, and there was sufficient evidence on the question to warrant the jury in so finding.

Appellant earnestly contends that the court erred in overruling objections to certain questions propounded to appellee's witnesses as to the value of appellee's land before and after the alleged injury complained of, on the grounds that said witnesses did not qualify so as to show they were competent to testify as to the value of the land. We have carefully examined the record, and find that these witnesses were familiar with the farm land in question, and the value of lands generally in that vicinity, some of them having farmed the land for years, others having worked on said land, and practically all of them living in the community. There was no error in the admission or rejection of evidence. The testimony was competent, and its weight was a question for the jury to determine.

Complaint is also made as to instructions given, but, after a careful examination of the same, we hold that there was no error in the giving of any of said instructions complained of.

Appellant also complains of the amount of damages assessed, but we do not feel justified in disturbing the verdict on that account. The jury was evidently justified, by the evidence in the case, in assessing the amount of damages it did, if it believed that

about 600 acres of appellee's land were overflowed and damaged as alleged in the complaint.

After a careful consideration of the record, we are convinced that appellant has had a fair trial, and we find no reversible error.

Judgment affirmed.

Dausman, J., absent.