James A. BAUER and Peggy L. Bauer,
Appellants–Plaintiffs,

v.

Keith H. HARRIS and Tammy D.
Harris, Appellees–Defendants,

v.

Laura Lee BARRELL, Third
Party Defendant.

No. 65A01–9208–CV–267.

Court of Appeals of Indiana,
First District.

July 13, 1993.

Rehearing Denied Aug. 19, 1993.

Curt J. Angermeier, Evansville, for appellants-plaintiffs.

Leslie C. Shively, Noffsinger, Price, Bradley & Shively, Evansville, for appellees-defendants.

## STATEMENT OF THE CASE

NAJAM, Judge.

James and Peggy Bauer ("Bauers") appeal a judgment in favor of their neighbors, Keith and Tammy Harris (Harrises), following a bench trial on the Bauers' claim of a prescriptive easement across a twelve-foot wide strip of the Harrises' property. The trial court found that the Bauers failed to establish their claim because their use was not exclusive, continuous or under a claim of right. We reverse and remand.[1]

## ISSUE

The Bauers present three issues for our review, but because of our resolution of this case, we address only the following issue: whether the trial court erred as a matter of law by concluding that the Bauers had not established a prescriptive easement over the Harrises' property.[2]

## FACTS

The facts most favorable to the judgment show that since 1883, the Bauer family has owned a one and three-quarters acre tract of land in Vanderburgh County which

---

1. We heard oral argument in Evansville on June 15, 1993.

2. The parties disagree on whether the issue of an implied easement was tried and on the significance of the trial court's finding that there was no necessity for the Bauers to cross the Harris property to access the Bauer property. Whether the implied easement issue was actual- ly tried is unclear from the record. In any event, we agree with the Bauers that the issue of necessity is irrelevant to a determination of whether an easement by prescription was estab- lished. However, given our resolution of this case, the trial court's finding on that issue does not affect our analysis.

lies adjacent and contiguous to property presently owned and acquired by the Harrises in March of 1989. Since the early 1900's, the Bauers have used a twelve-foot wide path or driveway ("Driveway") which crossed the extreme, southern tip of the Harris property to gain access to the Bauer property from Darmstadt Road east of the Harris property. During that time, the Bauers have constructed agricultural buildings on their property and used their property for a number of personal and business purposes, including boarding horses, operating a granary, and gardening and farming.

From 1904 to approximately 1940, the Evansville–Princeton traction line ("Railroad") was in service along the east/west boundary between the Bauer and Harris properties, and members of the public used the Driveway for access to the Railroad. Until approximately 1921, the Bauers operated a granary business, and their customers would use the Driveway for access to the granary. Thereafter, the Bauers and their customers used the granary facility as a barn for storing farm implements until the Bauers razed the facility in 1945. From the 1930's until 1979, the Bauers leased a driveway across their property to another neighbor for access by that neighbor to a garage on adjoining property, which also required use of the Driveway across the Harris property. While the Driveway was not the only means of ingress and egress to the Bauer property, the Bauers, their customers and lessees used the Driveway primarily because it provided more convenient access.

In 1987, the Bauers again leased their property, this time to the Peyronnin Construction Company. Peyronnin's vehicles also used the Driveway across the Harris property in order to gain access to the Bauer property. While using the Bauer property, Peyronnin placed gravel on the Driveway to facilitate construction traffic. In early May of 1989, after the Harrises had acquired title to their property but before taking possession, Peyronnin complied with the Harrises' request that it remove the gravel and plant grass over the Driveway.

Also in early May of 1989, the Bauers decided to sell their property at public auction. A representative of the Bauers placed a sign advertising the auction near Darmstadt Road in the Driveway area. The Harrises protested and the sign was relocated farther west off Darmstadt Road on the Bauers' property. That sign apparently awakened the Harrises, because shortly thereafter the Harrises erected a fence which obstructed the Driveway, declaring that the Bauers had no right to cross their property. The Bauers filed suit on August 2, 1989, claiming an easement over the Harris property and the Harrises counterclaimed to quiet title to the disputed area. The trial court entered judgment for the Harrises, and the Bauers appeal. We will state additional facts in our discussion where necessary.

### DISCUSSION AND DECISION

The trial court entered judgment accompanied by special findings as requested by the Bauers pursuant to Trial Rule 52(A). When reviewing such findings and conclusions, we first determine whether the evidence supports the court's findings, and second, whether the findings support the judgment. *Matuga v. Matuga* (1992), Ind. App., 600 N.E.2d 138, 140, *trans. denied.* The judgment will be reversed only when clearly erroneous, or when it is unsupported by the findings and conclusions entered on those findings. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.*

If the special findings do not support the judgment, our review is concluded. *In Matter of E.M.* (1991), Ind.App., 581 N.E.2d 948, 951, *trans. denied.* We may not search outside the trial court's findings for evidence which supports the judgment. *Data Processing Services, Inc. v. L.H. Smith Oil Corp.* (1986), Ind.App., 493 N.E.2d 1272, 1274. To affirm, we must instead determine that the specific findings made are adequate to support the trial court's decision. *Id.* Special findings are

adequate if they disclose a valid basis for the legal result reached by the trial court. *Id.* Likewise, special findings are inadequate if they fail to disclose a valid basis for the conclusions and judgment. *See id.*

The Bauers contend that the judgment is erroneous as a matter of law due to the following conclusions entered by the trial court:

> "Harris and their predecessors permitted use of their property by Bauer and their predecessors, but the general public and specific others were permitted to use the pathway.
>
> While Baier's [sic] use need not be exclusive, at a minimum their use had to be exclusive as to the public in general and under some claim existing in Bauer's favor. Such was not established by the evidence. *DeShields v. Joest* ([109] Ind. App. [383], 1941), 34 N.E.2d 168
>
> Bauer's use of the pathway was not exclusive and was intermittent and occasional, not continuous and uninterrupted, and was permissive, not under a claim of right."

Record at 21. The Bauers acknowledge that the testimony of Bauer family members generally supports the trial court's findings of fact. *See* Appellants' Brief at 11. Therefore, our only task is to determine whether the findings of fact support the trial court's conclusions and judgment.

■ A prescriptive easement is established by actual, open, notorious, continuous, uninterrupted, adverse use for 20 years under a claim of right, or by continuous adverse use with the knowledge and acquiescence of the servient owner. *Powell v. Dawson* (1984), Ind.App., 469 N.E.2d 1179, 1181; IND.CODE § 32–5–1–1. Continuity of use for the requisite twenty-year period may be established by tacking from the use of predecessors in title. *DeShields v. Joest* (1941), 109 Ind.App. 383, 387, 34 N.E.2d 168, 170, *trans. denied.* Thus, we cannot agree with the Harrises' contention that only the period from 1979, during which James and Peggy Bauer have been in title and possession, is relevant and that it is "impossible" for them to have met their burden of proof. *See* Appellees' Brief

at 11–12. Where there has been use of an easement for 20 years which is unexplained, such use will be presumed to be under a claim of right, adverse, and sufficient to establish title by prescription unless that use is contradicted or explained. *DeShields*, 109 Ind.App. at 387, 34 N.E.2d at 170; *Reder v. Radtke* (1961), 132 Ind. App. 412, 417, 177 N.E.2d 669, 672. In other words, a rebuttable presumption that use is adverse arises under those circumstances, and in order to rebut that presumption the owner must explain such use by demonstrating that he merely permitted the claimant to use his land. *Bulatovich v. Easton* (1982), 435 N.E.2d 997, 998–99, *trans. denied.*

### *Exclusivity of Use*

■ The primary dispute between the parties concerns the proper interpretation to be given our decision in *DeShields v. Joest*, where we discussed what constitutes exclusive use of a prescriptive easement:

> " 'By exclusive, the law does not mean that the right of way must be used by one person only, because two or more persons may be entitled to the use of the same way, but simply that *the right should not depend for its enjoyment upon a similar right in others,* and that the party claiming it exercises it under some claim existing in his favor, independent of all others. *It must be exclusive as against the right of the community at large.*' "

*DeShields*, 109 Ind.App. at 388, 34 N.E.2d at 170 (quoting *Cox and Wife v. Forrest* (1883), 60 Md. 74) (emphasis added). The Harrises contend that the trial court's interpretation of *DeShields* is correct, apparently reasoning that *DeShields* means that use of an easement cannot be exclusive for the required period if the general public also uses the easement. The Bauers, however, urge that the mere fact that the general public also used the easement does not render the Bauers' use non-exclusive. We hold that the trial court misapplied the *DeShields* decision to the facts of this case. The trial court's conclusion that the Bauers' use was not exclusive is contrary

to law because the Bauers did not rely upon the general public's use of the Driveway but instead relied upon their own use of the Driveway for personal and business purposes to establish their claim.

■ Public use of an easement does not per se deprive a claimant of exclusive use of an easement. Rather, *DeShields* provides only that, "the right should not depend for its enjoyment upon a similar right in others." *Id.* In *DeShields* and in *Alsam v. Matthews* (1954), 125 Ind.App. 132, 141, 122 N.E.2d 145, 149, a case which follows *DeShields*, we applied this rule and found that the claimant's use was "exclusive" even though persons other than the claimant used the easement. Here, the Bauers' use was independent of and without regard to use of the Driveway by others. *See Alsam*, 125 Ind.App. at 141, 122 N.E.2d at 149.

The trial court's findings disclose that, but for use by the public and by a utility company to gain access to the Railroad, only the Bauers, their customers and lessees used the easement. The Railroad ceased service in 1940 and the court found that utility company vehicles crossed the Harris property only from "time to time." Record at 19. However, whether the Bauers' use of the Driveway was exclusive during the period the Railroad was in service is not dispositive.[3] If we determine from the court's findings that the Bauers maintained exclusive use for *any* twenty year period, the Bauers acquired a prescriptive easement over the Harrises' property by operation of law at the conclusion of that period. *Cf. Williams v. Rogier* (1993), Ind.App., 611 N.E.2d 189, 196, *trans. denied* (title by adverse possession vests by operation of law without further action by claimant once requisite conditions met for statutory period).

The court's findings show, in fact, that the Bauers continued using the Driveway for both personal access to their property and for use by their customers and lessees

after 1940 and until 1989 when the Harrises constructed a fence blocking the Driveway. *See* Record at 19–20. Use by the Bauers' customers and lessees was not use by the general public but was derivative of the Bauers' claim of right to use the Driveway. Indeed, the court's findings reveal that the only members of the public regularly using the easement after 1940 were Bauer family customers and lessees. The trial court could not have reasonably concluded that the Bauers' claim depended on the public's use of the Harris property after the Railroad discontinued service in 1940. *See DeShields*, 109 Ind.App. at 388, 34 N.E.2d at 170.

■ Thus, in the context of a prescriptive easement, the term "exclusive use" means an independent claim of right, a use which does not depend upon use by others; it does not mean a use which excludes others entirely. The trial court's conclusion that the Bauers' use of the Driveway was not exclusive is erroneous as a matter of law. We must therefore determine whether the court's misapplication of *DeShields* is fatal to the judgment or whether the remaining findings and conclusions nevertheless support the judgment. *See Williams*, 611 N.E.2d at 196.

### *Continuity of Use*

■ The next step in our analysis is to determine whether the trial court's findings of fact support the court's conclusion that the Bauers' use of the Harrises' property "was intermittent and occasional, not continuous and uninterrupted." Record at 21. The two dispositive findings of fact relating to that conclusion read:

"Prior to 1945, Bauer's predecessors in title maintained a garden or small farm on their property and rented the property to other members of the general public for farming or gardening purposes. These persons accessed the Bauer property by crossing the Harris property at the site of the easement."

---

**3.** In any event, the court's findings indicate that the Bauers' use of the easement while the Railroad was in operation was not co-extensive with use by the general public. Rather, the Bauers

used the easement not merely to access the Railroad, but to access their own property farther west for their own purposes.

. . . .

From the 1960's to the present time, Bauer and their predecessors in title hayed and mowed the Bauer property approximately twice each year. They accessed the Bauer property for this purpose by crossing the Harris property at the site of the easement. . . ."

Record at 19–20.

These two findings do not support the legal conclusion that the Bauers' use was not continuous for the statutory period. The trial court apparently concluded from these findings that using the easement to gain access twice each year for "haying and mowing," and for gardening and farming by the Bauers and their lessees, was too intermittent and occasional to constitute continuous use. "Continuous and uninterrupted use" means use which is not interrupted by the act of the owner of the land, or by voluntary abandonment by the party claiming an easement. *DeShields*, 109 Ind.App. at 389, 34 N.E.2d at 170. Mere intermissions in use of a reasonable duration do not constitute voluntary abandonment. *Bromelmeier v. Brookhart* (1991), Ind.App., 570 N.E.2d 90, 92, *trans. denied.* Continuous use does not necessarily mean constant use. *Umbreit v. Chester B. Stem, Inc.* (1978), 176 Ind.App. 53, 55, 373 N.E.2d 1116, 1118. To abandon use, the adverse user must not only cease use but must also intend to abandon use. *Bromelmeier*, 570 N.E.2d at 92.

There is no finding that the Harrises or any of their predecessors in interest interrupted the Bauer family's use of the Harris property until the Harrises erected the fence in May of 1989. Thus, we must determine if the findings show that the Bauers abandoned their use of the easement. Here, no intent to abandon the use of the easement can reasonably be inferred from mere lapses in use during those periods when haying, mowing, gardening and farming were not in season. *See id.* (no abandonment of prescriptive easement found where easement to lake not used for two summers due to repairs, but use resumed after repairs completed). The court's findings disclose that the

Bauers and their lessees used their property primarily for gardening and farming. Uninterrupted and continuous use does not mean "that a person shall use a way every day for twenty years, but simply that he exercises the right more or less frequently, *according to the nature of the use to which its enjoyment may be applied."* *DeShields*, 109 Ind.App. at 389, 34 N.E.2d at 170 (emphasis added). The Bauers used the Harrises' property as an access road to their property "according to the nature of its use" and in a "manner consistent with [their property's] normal purposes," which in this instance was farming and farm-related business. *See id.; Williams*, 611 N.E.2d at 194 (maintaining yard up to fenceline consistent with normal use of property to establish adverse possession of area within fence). Intermissions in the Bauers' use of the Harris property, in light of the undeveloped nature of the Bauers' property, were reasonable in duration and consistent with continuous use.

In addition, public use attributable to the Bauers supports their continuity of use. When the general public uses property of its own volition, and that use merely benefits a business owner who does not own the property, the business owner cannot claim an easement as a result of such voluntary use. *See Greenco, Inc. v. May* (1987), Ind.App., 506 N.E.2d 42, 46 (finding no prescriptive easement where members of general public, not just customers of business claiming easement, used parking lot without direction from business, and acts of business did not demonstrate claim of right to use lot). However, when a business owner directs members of the public, as customers, to patronize his business by using property which he claims a right to use, that commercial use may be attributed to the business owner and supports his claim to a prescriptive easement. *Cf. Marathon Petroleum Co. v. Colonial Motel Properties, Inc.* (1990), Ind.App., 550 N.E.2d 778, 782–84 (finding adverse possession of parking lot established where business owner directed its patrons to park in

lot and general public not allowed use).[4] Where the right to use an easement does not depend upon indiscriminate use by the public, continuous use may ripen into an easement. *See Greenco*, 506 N.E.2d at 46; *DeShields*, 109 Ind.App. at 389, 34 N.E.2d at 170.

Here, the Bauers used the Harris property both for personal access to their property and for access by their business invitees and lessees. The court's findings reveal that over the years the Bauers leased portions of their property for various business pursuits, and that on every occasion, their customers and lessees crossed the Harris property at the site of the claimed easement to reach the leased portions of the Bauers' property.[5] The Bauers' lessees and business customers used the Driveway across the Harris property at the Bauers' express or implied direction, and accordingly, that use is attributable to the Bauers for the purpose of establishing an easement. The Bauers' activities on their property, including leasing the property for farming and operation of a granary, evidence an intent to use the Harris property for access, not an intent to abandon use. The use by the Bauers' customers and lessees was derivative of the Bauers' claim of right to an easement, and that use is attributable to the Bauers and ratifies their claim. *Cf. Marathon Petroleum*, 550 N.E.2d at 783 (adverse possession shown by activity of using claimed property as parking lot for customers). In sum, the trial court's findings do not support the conclusion that the Bauers' use of the Harris property as an easement was not continuous for the statutory period.

**4.** We observe that with the exception of the shorter, ten-year statutory period required for establishing title to property by adverse possession, the elements of an adverse possession claim are virtually identical to those required to establish a prescriptive easement in property. Thus, decisions interpreting the elements of an adverse possession claim provide guidance here. *See Marathon Petroleum*, 550 N.E.2d at 782 n. 2.

**5.** For example, the trial court specifically found that the Driveway was used to facilitate Bauer family business during several periods: "Prior to 1945 ... [the Bauers] rented the property to other members of the general public for farm-

## Adversity of Use

The trial court found that the Bauers' use of the Driveway was permissive and not under a claim of right. A use which is merely permissive or which is exercised under a mere license cannot ripen into an easement. *Greenco*, 506 N.E.2d at 46. However, once open and continuous use of another's land commences with the knowledge of the owner, such use is presumed adverse. *Searcy v. LaGrotte* (1978), 175 Ind.App. 498, 501, 372 N.E.2d 755, 757. A claim of right does not require a verbal assertion of a claim, but may be established merely by inferences drawn from the surrounding circumstances. *Griffith v. Neff* (1964), 135 Ind.App. 674, 678, 196 N.E.2d 757, 759. Use is adverse rather than permissive where the use is inconsistent with the owner's title. *Null v. Williamson* (1906), 166 Ind. 537, 547, 78 N.E. 76, 79. Thus, it was not necessary that the Bauers maintain the easement or publicly or formally assert a claim of right in themselves to cross it. The nature and extent of their adverse use, including adverse use by others claiming under them, was a sufficient declaration. *See Griffith*, 135 Ind.App. at 678, 196 N.E.2d at 759.

Here, none of the court's findings of fact support the conclusion that the Bauers' use of the Harrises' property was permissive. A prescriptive easement may be established with the knowledge and acquiescence of the owner. *Powell*, 469 N.E.2d at 1181. The only inference which can be drawn from the findings of fact is that the Harrises acquiesced in the Bauers'

ing and gardening purposes. These persons accessed the Bauer property by crossing the Harris property"; "From the 1930's until 1979, [the Bauers] leased a portion of their property for use as a driveway to owners of the [adjacent property who] accessed the driveway ... by crossing the Harris property"; and "In 1987, [the Bauers] leased their property to Peyronnin Construction Company, Inc. for use as a storage and work station.... During the construction period of approximately two (2) years, Peyronnin vehicles accessed the Bauer property by crossing the Harris property...." Record at 18–19.

use of the Harris property as a means of access, not that the Harrises gave the Bauers permission to use their property.

This is not a case where an owner of property opens a road across his property for his own use, observes his neighbor also using the road, and the neighbor's use is presumed to be permissive because such use is consistent with the owner's title. *See Hutchinson v. Worley* (1958), 129 Ind. App. 157, 164, 154 N.E.2d 389, 393. The court's findings of fact do not suggest that the Harrises also used the Driveway or that it was the Harrises, and not the Bauers, who first began using it. There is no finding that the Harrises ever used the easement over the years. The easement was of no benefit to the Harrises because the easement only accessed the Bauers' property. Therefore, the Bauers' use was inconsistent with the Harrises' title to the property in all respects.

The claimant's act of directing his customers to use the easement also evidences use under a claim of right. *Compare Marathon Petroleum*, 550 N.E.2d at 782 (evidence established that claimants acted as sole owners of parking lot) *with Greenco*, 506 N.E.2d at ˙46 (evidence showed claimant never claimed right to use parking lot and public used lot of its own volition). For instance in *Greenco*, we found that a business owner (May) whose customers used an adjacent owner's parking lot for parking did not establish a prescriptive easement because the business owner did not claim the right for her customers to use the parking lot. *Greenco*, 506 N.E.2d at 46. May's use also could not be presumed adverse. *See id.* Because both her customers and the adjacent owner's customers used the parking lot, May's use was consistent with the adjacent owner's title and presumed permissive. *Id.; see Null*, 166 Ind. at 547, 78 N.E. at 79.

In this case, however, it can only be inferred from the Bauers' conduct in inviting customers to enter their property by using the Driveway and by leasing their property to others that they claimed the right to use the Driveway across the Harris property for access by their customers and lessees. Therefore, the trial court's findings of fact give rise to the rebuttable presumption that the Bauers' use was adverse and under a claim of right. There are no facts or inferences from facts in the record and no findings of fact which rebut that presumption and which support the conclusion that the Harrises merely permitted the Bauers to use their property for ingress and egress.

### *Extent of Use*

We agree with the Harrises that the Bauers' easement was limited to the purpose for which it was created and cannot be extended by implication. *See Brown v. Heidersbach* (1977), 172 Ind.App. 434, 439, 360 N.E.2d 614, 618, *trans. denied.* However, we do not agree with the Harrises' contention that because the Railroad, agricultural buildings, granary and garage were no longer in existence when James and Peggy Bauer took title to their real estate, the original purpose for the easement had expired and the easement was thereby extinguished. The original use and purpose remained the same: access to the Bauer property from Darmstadt Road. Once an easement by prescription has been established, the right vests, and the easement is not extinguished thereafter for lack of subsequent use absent the intention to abandon a right to use the easement. *See Skelton v. Schenetzky* (1924), 82 Ind.App. 432, 435–436, 144 N.E. 144, 144–45, *trans. denied;* 11 I.L.E. *Easements* § 21 (1958). We have already concluded that the evidence did not support the inference that the Bauers intended to abandon use of the Driveway. *See Continuity of Use, supra.* The Bauers were in fact using the Driveway as recently as a few months before the Harrises acquired title when the Bauers leased their property to Peyronnin Construction Company which crossed the Driveway to gain access. *See* Record at 20.

Further, the nature and extent of the right acquired by prescription is measured by the extent of actual use. *Northern Indiana Power Co. v. Castor* (1927),

88 Ind.App. 339, 343–44, 156 N.E. 571, 573, *trans. denied.* In their complaint the Bauers alleged their right to an easement twenty-seven feet in width. At its creation, the Driveway was twelve feet wide, and the trial court found that the Bauers used a twelve-foot wide driveway over the Harris property to gain access to their property. There are no grounds to disturb that finding.

### CONCLUSION

The trial court's findings of fact do not support the court's conclusions and judgment in favor of the Harrises. Those findings instead demonstrate that the Bauers acquired a twelve-foot wide prescriptive easement over the Harrises' property. The judgment is reversed and remanded for proceedings consistent with this opinion.

Reversed and remanded.

ROBERTSON and BAKER, JJ., concur.