**Jerry W. BASS, Bettye A. Bass, Jack E. Sutton, and Kathy L. Sutton, Appellants–Defendants,**

v.

**Jeffrey C. SALYER and Renea M. Salyer, Appellees–Plaintiffs.**

No. 43A03–0904–CV–186.

Court of Appeals of Indiana.

March 17, 2010.

Thomas J. Trauring, Kokomo, IN, Attorney for Appellants.

Stephen R. Snyder, Randall L. Morgan, Syracuse, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Jerry W. Bass, Bettye A. Bass, Jack E. Sutton, and Kathy L. Sutton (collectively "the Lot Owners") appeal from the trial court's judgment in favor of Jeffrey C. Salyer and Renea M. Salyer on the Salyers' complaint to quiet title in a prescriptive easement over the Lot Owners' property and in the riparian area abutting that property. We restate and address the following issues on appeal:

1. Whether the trial court erred when it concluded that the Salyers had established a prescriptive easement over the underlying fee simple title of the Lot Owners within a drive previously platted and dedicated as a public easement.

2. Whether the trial court erred when it concluded that the Salyers had established a prescriptive easement in the riparian area of a lake abutting the Lot Owners' property.

We reverse.

## FACTS AND PROCEDURAL HISTORY

In 1951 a plat was filed in the Kosciusko County Recorder's Office that established the "Roy Hohman Subdivision on Yellow Creek Lake, Kosciusko County, Indiana" ("the Subdivision"). Plaintiff's Exhibit 3. Two lots in the Subdivision abut the north side of County Road 850 South ("C.R. 850"), an east-west road. On the south side of C.R. 850, the remainder of the Subdivision consists of a row of lots that abut the road and a row of lots that abut Yellow Creek Lake to the south, with a drive running generally east-west between the two rows of lots. Yellow Creek Lake is the southern boundary of the Subdivision. Lots 10 and 17 of the Subdivision abut the south side of C.R. 850. The plat also contains a north-south drive ("the Drive") running between Lots 10 and 17.[1] The Drive connects C.R. 850 with Yellow Creek Lake.

In 1969, Cecil and Susan Salyer ("the Salyer parents") purchased a parcel of property on the north side of C.R. 850. That parcel is not part of the Subdivision but is located across C.R. 850 from Lots 10 and 17. The Salyer parents and their family routinely accessed Yellow Creek Lake via a path down the center of the Drive, and, by 1972, they had installed a pier ("the Salyer pier") in Yellow Creek Lake where the Drive meets the lake. Pier posts were installed on the shore, and the pier rested on cement blocks on the shore. From 1972 to May 2008, the Salyer parents and their family maintained the pier in that location and moored a boat on one or both sides of the pier.

On September 20, 1994, the Kosciusko County Board of Commissioners ("the Board") passed Ordinance Number 1994-12Z, which vacated the northern portion of the Drive from where it abutted C.R. 850 to the southern boundaries of Lots 10 and 17 ("First Vacated Tract").[2] By that act, title to the vacated portion of the Drive was transferred to the adjacent property owners. The western half of the vacated portion of the Drive was transferred to the owners of Lot 10 and the eastern half of the vacated portion of the Drive was transferred to the owners of Lot 17. On November 16, 2004, the Board vacated an additional portion of the Drive when it passed Ordinance Number 04–11–16–001V ("Second Vacated Tract").[3] That portion of the Drive runs from the southern boundary of Lot 17 to the lake and terminates at the riparian area where the Salyers built their pier. Title to the Second Vacated Tract was transferred to the owners of Lot 17.

---

**1.** Although the plat also contains an east-west path marked "drive," and our references to "the Drive" refer only to the north-south drive at issue in this appeal.

**2.** The 1994 ordinance was recorded September 28, 1994.

**3.** Ordinance 04–11–16–001V was recorded February 9, 2005. The trial court found that the ordinance was passed on the recording date. But the parties do not contest the date of this ordinance, nor is the particular date of passage or recording material to resolve the issues presented in this appeal.

And on January 8, 2008, the Board passed Ordinance Number 08–01–08–001V, which vacated the remaining portion of the Drive ("Third Vacated Tract"). The Third Vacated Tract abuts Lot 10 to the north, Lot 16 to the south, and the Second Vacated Tract to the east. Title to the Third Vacated Tract was transferred to the owners of Lot 10, who also owned Lot 16.

In 1995, Jeffrey Salyer purchased the Salyer parcel from his mother, Susan Salyer. As of 2008, the Basses owned Lot 10, Lot 16, the western part of the First Vacated Tract, and all of the Third Vacated Tract, and the Suttons owned Lot 17, the eastern half of the First Vacated Tract, and all of the Second Vacated Tract.[4] On May 26, 2008, the Basses and the Suttons removed the Salyer pier. On June 27, 2008, the Salyers filed a complaint to quiet title in a prescriptive easement over the real estate formerly platted as the Drive between C.R. 850 and Yellow Creek Lake and in the riparian area and to enjoin the Basses and the Suttons from interfering with the Salyers' use of that easement.

A bench trial was held on February 16, 2009. On April 8, 2009, the trial court entered judgment in favor of the Salyers. The court made special findings and conclusions under Trial Rule 52(A). The Basses and Suttons now appeal.

## DISCUSSION AND DECISION

### Standard of Review

The trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. *Menard, Inc. v. Dage–MTI, Inc.,* 726 N.E.2d 1206, 1210 (Ind.2000). First, we consider whether the evidence supports the factual findings. *Id.*

Second, we consider whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen,* 671 N.E.2d 98, 102 (Ind.1996). A judgment will be clearly erroneous either when there is "no evidence supporting the findings or the findings fail to support the judgment." *Chidester v. City of Hobart,* 631 N.E.2d 908, 910 (Ind.1994). A judgment is also clearly erroneous when the trial court applies the wrong legal standard to properly found facts. *Yanoff v. Muncy,* 688 N.E.2d 1259, 1262 (Ind.1997). While findings of fact are reviewed under the clearly erroneous standard, appellate courts do not defer to conclusions of law, which are reviewed de novo. *Fobar v. Vonderahe,* 771 N.E.2d 57, 59 (Ind.2002).

### Prescriptive Easements

Prescriptive easements are not favored in the law. *Carnahan v. Moriah Prop. Owners Ass'n., Inc.,* 716 N.E.2d 437, 441 (Ind.1999). For that reason "the party claiming [a prescriptive easement] must meet 'stringent requirements.'" *Id.* (citations omitted, alteration in original). Formerly, a party claiming the existence of a prescriptive easement was required to provide evidence showing "an actual, hostile, open, notorious, continuous, uninterrupted adverse use for twenty years under a claim of right." *Id.* Further, "'each ... element [ ] ... [had to] be established as a necessary, independent, ultimate fact, the burden of showing which is on the party asserting the prescriptive title, and the failure to find any one such element [is] fatal ..., for such failure to find is construed as a finding against it.'" *Id.* (citation omitted, alteration in original).

---

4. Jack Sutton had purchased Lot 17 from his parents in 1991, who had owned the property since 1977. The Basses had purchased Lots 10 and 16 in 2006.

■ But in *Wilfong v. Cessna Corp.*, 838 N.E.2d 403 (Ind.2005), our Supreme Court modified the traditional elements of prescriptive easements to correspond to the Court's recently reformulated elements of adverse possession:

> In our recent decision, *Fraley v. Minger*, 829 N.E.2d 476 (Ind.2005), we reviewed the history of the doctrine of adverse possession in Indiana and reformulated the elements necessary for a person without title to obtain ownership to a parcel of land. We held that the claimant in such circumstances must establish clear and convincing proof of (1) control, (2) intent, (3) notice, and (4) duration.[5] *Id.* at 486. This reformulation applies as well for establishing prescriptive easements, save for those differences required by the differences between fee interests and easements.

*Wilfong*, 838 N.E.2d at 406 (footnote in original). Whether a prescriptive easement exists is a question of fact. *Capps v. Abbott*, 897 N.E.2d 984, 988 (Ind.Ct.App. 2008).

The Lot Owners contend that the trial court erred when it concluded that the Salyers had proved all of the elements required to establish a prescriptive easement. Specifically, the Lot Owners contend that, "[s]o long as the Drive remained dedicated to Kosciusko County and under its control, all members of the public had a right to use it." Appellant's Brief at 10. And they argue that, because the Drive was dedicated as a public way, the Salyers have neither proved adverse use nor met the prescriptive period. The Salyers counter that they have met their burden to prove adverse use of the property of "the Basses and Suttons as private owners of the underlying fee simple title" in the area marked on the plat as the Drive and in the riparian area where the Drive meets the lake.[6] Appellees' Brief at 15.

In their complaint the Salyers sought to establish a prescriptive easement "for the purpose of access to Yellow Creek Lake, placing a pier in the waters of Yellow Creek Lake and docking a boat in the waters of Yellow Creek Lake[.]" Appellants' App. at 25. The trial court likewise

---

5. These four elements are established by clear and convincing proof of the following:

> (1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);
> (2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");
> (3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,
> (4) Duration—the claimant must satisfy each of these elements continuously for the

required period of time (reflecting the former "continuous" element).
*Fraley*, 829 N.E.2d at 486.

6. The Salyers also suggest that the Lot Owners waived review of the trial court's determination on the prescriptive easement because the Lot Owners did not frame their argument in terms of the elements now required to establish a prescriptive easement. As discussed above, the Salyers are correct that the Indiana Supreme Court has recently reformulated the elements of prescriptive easements. But that reformulation did not constitute a material change in the type of evidence required. Instead, the new elements merely recategorize of the former elements, as shown by the supreme court's definition of the new elements in terms of the former ones. *See Fraley*, 829 N.E.2d at 486. Moreover, the Salyers have not cited any legal authority to support their contention. We have no difficulty in following the Lots Owners' arguments and will consider their claim on the merits.

considered the issues of access to the lake and use of the riparian area as a single issue. But we will first consider the prescriptive easement claim regarding access over the Drive and will then turn to the same claim regarding the riparian area. We believe that this is the most logical approach given that, as discussed below, a property interest in the land appurtenant to a riparian area is a condition precedent to riparian rights.

### 1. The Drive

■ Between 1951 and, at the earliest, 1994, Kosciusko County held a public easement over and across the Drive. The Kosciusko County Board of Commissioners approved the Subdivision plat on July 2, 1951, and the plat was recorded on July 5, 1951. It is well-settled that "the owner 'who plats a street and acknowledges the plat and has it approved and recorded grants to the municipality, in trust for the public, title to an easement for a street[.]' " *Poznic v. Porter County Dev. Corp.*, 779 N.E.2d 1185, 1192 (Ind.Ct.App.2002) (quoting *Beaman v. Smith*, 685 N.E.2d 143, 147 (Ind.Ct.App.1997)). Thus, when the Board of Commissioners approved the plat and the plat was recorded, there was a statutory dedication of the Drive. And when the Drive was dedicated, the county acquired title to an easement over the Drive in trust for the public. *See id.*

■ The arguments advanced by the Lot Owners and the Salyers depend upon whether the use of the Drive by the Salyers (and their predecessors in title) was adverse to the fee simple title of the Lot Owners during the period when the Drive was a dedicated public easement. As explained above, a claimant cannot prevail on a prescriptive easement claim if he fails to prove any one of the four elements of control, intent, notice, and duration. *Carnahan*, 716 N.E.2d at 441. In this case we hold that the element of intent is dispositive.

■ Intent reflects the former elements of "claim of right," "exclusive," "hostile," and "adverse." *Fraley*, 829 N.E.2d at 486. In this context, intent is not subjective but is determined by objective, observable conduct measured against the applicable legal standard. Here, the question presented is whether while the Salyers were using a public easement over the Drive to access the lake, they perfected an adverse claim to a prescriptive easement over the Drive against the Lot Owners. We will also consider whether the Salyers' use of the Drive was exclusive.

On the question of intent, the trial court found in relevant part that:

> *The interest of* [*the Salyers* ] *and* [*their* ] *predecessors in title* to the access to their pier over two and one-half feet (2 1/2) on each side of the centerline extended to the drive located between Lots 10 and 17 on the Roy Homan Subdivision on Yellow Creek Lake *is unique and distinct from any interest claimed by the public in what had been the public way shown on that plat.* The use by Plaintiffs and Plaintiffs' predecessors in title was a use of the underlying fee simple title of Defendants and Defendants' predecessors in title and not the use of a public way as described on the Roy Hohman Subdivision on Yellow Creek Lake [plat.]

Appellants' App. at 4 (emphases added). The trial court then concluded that, with respect to the area formerly occupied by the public easement, that the Salyers "have demonstrated their intent to claim the right of access to the water's edge . . . superior to the rights of all others and in particular superior to the rights of adjacent owners." Appellants' App. at 10.

The Salyers contend that under *Daisy Farm Limited Partnership v. Morrolf*, 886

N.E.2d 604 (Ind.Ct.App.2008), *trans. denied* ("*Daisy Farm I*"), they may acquire prescriptive rights in the fee simple interest of the Lot Owners underlying the public easement across Lots 10 and 17. The question presented in *Daisy Farm I* was whether the claimant's use of real property that was burdened in part by a public easement could ripen into title by adverse possession of the underlying fee simple title. On that question, we held that prescriptive rights can be established against the underlying fee holder of land burdened by an easement in favor of the public, but only if there is sufficient evidence to satisfy all four elements of adverse usage in addition to the permitted use under the easement. *Id.* at 611. We remanded for the trial court to determine whether Daisy Farm, the claimant, had met that burden. *Id.* On remand, the trial court found that Daisy Farm and its predecessors in title had failed to exert "sufficient control, intent, notice, and duration in addition to permitted use" by others to acquire title by adverse possession. *Daisy Farm Ltd. Partnership v. Morrolf*, 915 N.E.2d 480, 485 (Ind.Ct.App.2009) ("*Daisy Farm II*"). We affirmed on appeal based on Daisy Farm's failure to establish the element of control.[7] *Daisy Farm II*, 915 N.E.2d at 489.

In *Brown v. Heidersbach*, 172 Ind.App. 434, 360 N.E.2d 614 (1977), we considered the claim of a prescriptive easement over a recorded easement providing access to a lake similar to the claim asserted by the Salyers in this case. In *Brown* the recorded easement was not platted for use by the public but was created by grants contained in deeds. The owners of the dominant estates brought an action for an injunction declaring their right to exclusive use and possession of the easement and to prevent the owners of the servient estates from expanding the number of persons authorized to use the easement. The trial court enjoined the servient owners from interfering with the dominant owners' right to the peaceful use and possession of the easement "as the same has been enjoyed by [them] and their predecessors in title for more than twenty years last past" and restricted use of the easement to the dominant owners and their successors in interest. *Id.* at 618.

In *Brown*, we reversed the trial court's conclusion and judgment that the owners of the dominant estates had acquired an exclusive prescriptive easement over the same easement granted in the deeds. We noted that if an easement is enjoyed under a deed there can be no adverse enjoyment until the expiration of the right under the deed, *id.* at 618, and we held that:

> Since the use was not adverse, the easement cannot be expanded by prescription into an exclusive easement. The use of the land for access was expressly permissive. If the facts and circumstances of a case lead to the conclusion that the user was merely permissive, they are fatal to the prescription.

*Id.* at 621.

Here, too, the Salyers' use of the public easement was permissive. Like the dominant owners of the easement created by deeds in *Brown*, as members of the public the Salyers were granted use of a platted Drive for access to the lake. And, just as in *Brown*, their use of the Drive was consistent with the grant of the public easement and did not become adverse until their right to use the easement expired when the Drive was vacated.

---

7. In *Daisy Farm II*, in dictum we also considered whether the claimant had paid taxes on the real estate. The payment of taxes is not an element required to establish a prescriptive easement.

From 1969 until the Board vacated the Drive by ordinances passed between 1994 and 2008,[8] the period of time in question during which the Salyers used the Drive, the Drive in its entirety was a dedicated public way. *See Poznic*, 779 N.E.2d at 1192. Nevertheless, the trial court found that the Salyers' use of the Drive was "unique and distinct," presumably because they used the Drive to access the pier that they had built, maintained, and used in the riparian area.[9] But, the Salyers have not shown that their use of the Drive to access the lake from C.R. 850 exceeded the grant of the easement created by the statutory dedication and, thus, have not met the burden of *Daisy Farm I* or *Brown*. In other words, because the Salyers' use of the Drive to access the lake was a use permitted under the public easement, they have not shown that their use was adverse to the Lot Owners' underlying fee simple title.

■ The Salyers would have had no right to enter upon the Drive were it not for the public easement. We do not subscribe to the Trojan Horse argument that while the Salyers were enjoying use of the public easement, their permissive use concealed an adverse claim to a prescriptive easement over the same area. Having used the public easement for its intended purpose, to access the lake, the Salyers cannot demonstrate that their use was at the same time under a claim of right, exclusive, hostile, or adverse to the fee simple title of the Lot Owners. *See Fraley*, 829 N.E.2d at 486. Because the Salyers have not shown adverse use, they have not shown an intent to use the Drive in a manner superior to the rights of all others, including the Lot Owners.[10] *See id.*

■ It is significant, if not controlling, that until the Drive had been vacated, the Lot Owners had no standing or authority to challenge or prohibit the Salyers' use of the Drive for access between C.R. 850 and the lake. A necessary corollary to the doctrine of prescription is the principle that the owner of the record title who has been duly placed on notice of an adverse claim can defeat that claim by timely asserting his property rights and objecting to the claimant's use. Here, however, during the period when the easement over the Drive was platted and dedicated to the public, the Salyers' use of the Drive for access to the lake was derived from, and entirely dependent upon, the public easement. Thus, it cannot be said that the Lot Owners acquiesced in the Salyers' adverse use of their fee simple title when the Salyers used a public easement to access the lake. *See Bauer v. Harris*, 617 N.E.2d 923, 927 (Ind.Ct.App.1993) (prescriptive easement is established in part by continu-

8. We acknowledge that the Salyers used the Drive following its vacation in three installments. Use following each vacation could have been adverse as to the fee simple title in the vacated tract. But the first act vacating a portion of the Drive occurred in 1994, less than twenty years ago. Because the prescriptive period is twenty years, the Salyers cannot establish adverse use for the prescriptive period following vacation of any tract of the Drive.

9. As discussed below, any valid claim of an interest in the pier and the riparian area is ancillary to and contingent upon whether the Salyers had a property interest in the abutting land.

10. The trial court also found that the Drive was "not routinely used by the public." Appellants' App. at 8. But the public's failure to use a dedicated way does not affect the easement granted under the dedication. *See Zakutansky v. Kanzler*, 634 N.E.2d 75 (Ind.Ct. App.1994) ("frequency of use is unimportant and a road is nonetheless a highway though rarely used, if used by those who desire to go that way.") (internal quotation omitted).

ous adverse use with knowledge and acquiescence of servient owner).

Further, the Salyers have not demonstrated "exclusive" use sufficient to establish a private prescriptive easement over the Drive. Under the *Fraley* and *Wilfong* reformulation of the elements necessary to establish a prescriptive easement, the element of intent also includes the former element of "exclusive." *See Fraley,* 829 N.E.2d at 486. In *Bauer,* we considered what constitutes exclusive use of a prescriptive easement where the right-of-way at issue was also used by others. Citing the longstanding precedent of *DeShields v. Joest,* 109 Ind.App. 383, 34 N.E.2d 168, 170 (1941), we said:

> " 'By ["]exclusive,["] the law does not mean that the right[-]of[-]way must be used by one person only, because two or more persons may be entitled to the use of the same way, but simply that *the right should not depend for its enjoyment upon a similar right in others,* and that the party claiming it exercises it under some claim existing in his favor, independent of all others. *It must be exclusive as against the right of the community at large.*' "

*Bauer,* 617 N.E.2d at 927 (citation omitted). Thus, in *Bauer,* we held that, in the context of a prescriptive easement, the term "exclusive use" means an independent claim of right, a use which does not depend upon use by others; it does not mean a use which excludes others entirely, *Id.* at 928.

■ The dispute in *Bauer* was entirely between private parties. But the well-settled rule followed in *Bauer* is even more compelling here where access to the lake was by means of a platted public easement. Here, it is clear that the Salyers' right of access to and from the lake was not independent but relied entirely upon the general public's right to use the dedicated Drive. The Salyers' right of access to the lake depended upon a "similar right in others" granted in the plat, and it cannot be said that they had any right of access "exclusive as against the right of the community at large." *See id.* at 927. A claimant's right of access under a public easement is not exclusive precisely because that right is shared with others. As such, the Salyers' use of the Drive was not in the least an exclusive use, and they have wholly failed, as a matter of law, to demonstrate the exclusive use of the Drive required to demonstrate intent to establish a private prescriptive easement against the underlying fee simple title of the adjoining Lot Owners.

■■ Special findings must contain all facts necessary to recovery by a party and the ultimate facts from which the court has determined the legal rights of the parties. *Matter of Estate of Kroslack,* 570 N.E.2d 117, 121 (Ind.Ct.App.1991). A court on review must determine whether the specific findings are adequate to support the trial court's decision. *Id.* The findings are adequate if they disclose a valid basis under the issues to support the result reached in the judgment. *Id.* Likewise, special findings are inadequate if they fail to disclose a valid basis for the conclusions and judgment. *Bauer,* 617 N.E.2d at 927.

Here, even as a properly found fact, *see Yanoff,* 688 N.E.2d at 1262, the trial court's finding that the Salyers had a "unique and distinct" interest in access to the pier is not a valid basis to support the legal conclusion that they acquired, for their exclusive use and benefit, a prescriptive easement to the water's edge. This finding is inadequate as a matter of law because the Salyers' use of the public easement over the Drive was neither adverse to the Lot Owners nor superior to the rights of all others. The pier facilitated the Salyers' access to the lake, but whatev-

er recreational or personal property interest the Salyers had in the pier, they did not have a real property interest in the pier, and they used a public easement—not a private easement—to reach it. The ultimate facts, the facts that determine the legal rights of the parties, are that the Salyers' use of the Drive to access the lake was, at all relevant times, a permitted use under the easement and a non-exclusive right shared with the public.

Indeed, the judgment does not address the public easement. While the public easement is the single most significant fact in this case, the trial court's findings and conclusions barely acknowledge it. The public easement is conspicuous by its absence in the special findings and the elephant in the room of the judgment on appeal. The easement is referred to only indirectly and tangentially as "a drive" or "the drive" on the subdivision plat or "what had been the public way." The findings and conclusions do not squarely address either the fact or the nature, extent and legal effect of the public easement, and to that extent, the findings and conclusions are inadequate to support the judgment.

■ In sum, the Salyers' use of the Drive to access the lake was permissive, that is, their use of the Drive was a permitted use under the public easement. A permissive use cannot be adverse so as to ripen into an easement by prescription. *Brown*, 360 N.E.2d at 621. A right shared with the public is, by definition, non-exclusive. And where, as here, the use was not adverse, the easement cannot be expanded by prescription into an exclusive easement. *See id.* Thus, the Salyers have not demon-

strated the adverse and exclusive use required to establish an intent to use the underlying fee and have not established a prescriptive easement within the Drive. Accordingly, the trial court's judgment on this issue is clearly erroneous.

## 2. The Riparian Area

■ We next consider whether the Salyers have established a prescriptive easement in the riparian [11] area where the Drive meets the lake. Riparian rights have been described as follows:

> Generally, a property owner whose property abuts a lake, river, or stream possesses certain riparian rights associated with ownership of such a property. *Parkison v. McCue*, 831 N.E.2d 118, 128 (Ind.Ct.App.2005), *trans. denied; see also Watson v. Thibodeau*, 559 N.E.2d 1205, 1208 (Ind.Ct.App.1990) (riparian rights are appurtenant to the shore land owned in fee title); *Brown v. Heidersbach*, 172 Ind.App. 434, 440, 360 N.E.2d 614, 619 (1977) (riparian owner acquires his rights to the water from his fee title to the shore land). The term "riparian rights" indicates a bundle of rights that turn on the physical relationship of a body of water to the land abutting it. Robert E. Beck, *Waters and Water Rights* § 6.01(a) at 6–7 (2001). Riparian rights are special rights pertaining to the use of water in a waterway adjoining the owner's property. 78 Am. Jur. 2d Waters § 30 (2002). Riparian rights of the owners of lands fronting navigable waters are derived from common law as modified by statute. 65 C.J.S. Navigable Waters § 82 (2000). According to some authorities, riparian rights do not

11. Riparian rights have been traditionally associated with owners of land abutting a river or stream, while those with shoreline on a lake or pond acquired littoral rights. *Zapffe v. Srbeny*, 587 N.E.2d 177, 178 n. 1 (Ind.Ct. App.1992). *trans. denied.* But the term "riparian" is now widely used to refer to both classes of ownership, *id.*, and we use that term here.

necessarily constitute an independent estate and are not property rights per se; they are merely licenses or privileges. *Id.* Stated differently, they constitute property rights of a qualified or restricted nature. *Id.*

*Ctr. Townhouse Corp. v. City of Mishawaka*, 882 N.E.2d 762, 767–68 (Ind.Ct.App. 2008), *trans. denied.* In other words, a claimant must have a property interest in the land appurtenant to the water before he can acquire rights to use the water. *See id.*

Although riparian rights arise from ownership of the land appurtenant to the water, we have also held that one may acquire a prescriptive easement in riparian rights. In *Bromelmeier v. Brookhart*, 570 N.E.2d 90 (Ind.Ct.App.1991), *trans. denied*, we held that the dominant estate holder of a prescriptive easement may use the riparian rights of the servient tenant. *Id.* at 91–92. In *Bromelmeier*, a couple owned property across the road from lots that abutted a lake. A ten-foot-wide "strip" ran between two of the lake lots. *Id.* at 91. For more than twenty years, the couple used that strip to access the lake. They also installed a pier where the strip met the water. Subsequently, the lakeside lot owners on either side of the strip purchased the ten-foot-wide strip and erected a barrier across it.

The couple filed suit claiming that they had established a prescriptive easement in both the ten-foot-wide strip and the lot owners' riparian rights in the lake. The trial court agreed that the couple had acquired a prescriptive easement for access to the lake, but the court found riparian rights were "unavailable to those merely holding an easement." *Id.* On appeal, the parties did not dispute the establishment of a prescriptive easement in the ten-foot-wide strip, but the couple challenged the

court's determination that an easement cannot be established in riparian rights.

We held that resolution of the issue turned on the intent of the parties when they created the easement. *Id.* at 92. Specifically, "[w]here adequately demonstrated, the purpose and intent to use the riparian rights of a servient tenant become part of an easement acquired by prescription." *Id.* Based on the evidence in that case, we held that the couple had used the strip to access the lake for the installation and use of a pier and the surrounding water for the prescriptive period. *Id.* As such, we held that, as easement titleholders, the couple had also established a prescriptive easement in the riparian rights of the lakeside lot owners. *Id.* at 93. We note, however, that unlike in this case, *Bromelmeier* involved only a dispute between private parties, and there was no public easement for access to the lake in question.

Here, as in *Bromelmeier*, we have been asked to determine whether owners of real property that does not abut a lake have established a prescriptive easement in a path to access the lake and in riparian rights to the lake. In separate paragraphs the trial court concluded that the Salyers had established a prescriptive easement in the Drive and also in the riparian area. Having already determined that the Salyers have not established a prescriptive easement in the Drive, we must next determine whether they have established a prescriptive easement in the riparian rights to the lake.

In its judgment, the trial court held that:

[The Salyers] are the owners of an easement in the riparian area of [the Lot Owners] in Yellow Creek Lake, Kosciusko County, Indiana, described as follows:

Six feet (6') on either side of the centerline of a "drive" between Lots 10 and 17, extended into the water of Yellow Creek Lake a reasonable distance, as shown in the Plat of the Roy Hohman Subdivision on Yellow Creek Lake, recorded in Plat Book 4, page 5 in the Office of the Recorder of Kosciusko County, Indiana.

Appellants' App. at 11. This paragraph defines the area of water in which the trial court concluded that the Salyers had established riparian rights.

Again, "[t]he term 'riparian rights' indicates a bundle of rights that turn on the physical relationship of a body of water to the land abutting it." *Water and Water Rights* § 6.01(a) at 6–7. Here, the Salyers have no fee simple interest in any real property abutting Yellow Creek Lake. And, as we have determined above, they have not established a prescriptive easement within the Drive that connected C.R. 850 and Yellow Creek Lake. The Salyers have not cited and we have not found any precedent holding that one may acquire riparian rights by prescription where the claimant has no property interest in the land abutting the riparian area. Thus, on the facts presented, we conclude that the Salyers have not established a prescriptive easement in the riparian area defined in the trial court's judgment.

Our decision in *Bromelmeier* supports this result. There, we held that the owner of property that did not abut the lake had established a prescriptive easement in riparian rights based on the parties' intent when they created the easement appurtenant for the purpose of access to the lake. *Bromelmeier,* 570 N.E.2d at 92. As we stated, "[w]here adequately demonstrated, the purpose and intent to use the riparian rights of the servient tenant *become a part of* an easement acquired by prescription." *Id.* (emphasis added). Thus, implicit in

our holding is that the claimant's riparian rights were contingent upon having a real property interest in the property adjacent to the lake. In other words, a prescriptive easement may be established in a riparian area only if the claimant has a fee simple interest or other vested right to use the property that abuts the riparian area.

Likewise, in *Brown* we considered whether riparian rights inure to the dominant estate of a lakeside easement. The dominant owners contended that the access easement to the lake included more than mere access and that the easement created riparian rights incident to the easement, including the right to dock boats in the lake at a pier attached to the easement. Following the Michigan Supreme Court as well as similar cases from Minnesota and New York, we held that the grants creating the easement to the lake conveyed no riparian rights and that, absent an express grant, the dominant titleholder of a lakeside easement, the easement titleholder, does not hold the riparian rights inherent in the servient titleholder. *Id.* at 619–20.

Here, the Salyers have no fee simple interest in property abutting the lake. Nor have they established a prescriptive easement in the Drive that abuts the riparian area any greater than the public easement that has been vacated. Thus, we hold that the trial court erred when it held that the Salyers had established a prescriptive easement in the riparian area where the former Drive meets Yellow Creek Lake.

### Conclusion

We conclude as a matter of law that the Salyers have not proved that they own a prescriptive easement over the Drive. The Salyers'. contention that they demonstrated an intent to use the Drive adverse to the interests of the underlying fee simple title holders is not supported by the

trial court's finding that the Salyers' use of the Drive was "unique and distinct." Rather, the evidence supports a finding that while the Salyers built a private pier to facilitate their use of the lake, they used the public easement over the Drive to access the lake, which was a permitted use, the very purpose for the easement, and a right shared with the public. The Salyers have also not shown the establishment of a prescriptive easement in the Lot Owners' riparian rights. Again, riparian rights arise from a claimant's interest in the land abutting the water. Because the Salyers own neither a fee simple interest nor a prescriptive easement abutting the lake, they cannot and have not established a prescriptive easement in the Lot Owners' riparian rights. To the extent the trial court found to the contrary, the trial court's findings and conclusions are clearly erroneous.

Reversed.

FRIEDLANDER, J., and BRADFORD, J., concur.