**Douglas and Mary DOWNING, and Connie and Jeff McKay, Individually and d/b/a Grandma's Treasures, Appellants–Defendants,**

v.

**G. Douglass OWENS, Mahoney, Heineman & Co., P.C., Dale Judy d/b/a Donnie's Old Oak Tavern Corp., Morris and Edith McCurty, and John Doe, Business Invitee of Businesses Located on East Side of 100 Block of Pendleton Avenue and North Side of East 100 Block of North Pendleton Avenue, Appellees–Plaintiffs.**

No. 48A02–0307–CV–643.

Court of Appeals of Indiana.

June 2, 2004.

---

Norris Cunningham, Barbara A. Killian, Hall Render Killian Heath & Lyman, P.S.C., Indianapolis, IN, Attorneys for Appellants.

Max Howard, Howard & DeLey, Anderson, IN, Attorney for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Appellants–Defendants Douglas and Mary Downing and Connie and Jeff McKay, individually and d/b/a Grandma's Treasures (collectively, "Appellants") appeal the trial court's grant of a prescriptive easement to Appellees–Plaintiffs G. Douglass Owens, Mahoney, Heineman and Company, P.C. (individually, "Company"), Dale Judy d/b/a Donnie's Old Oak Tavern Corporation, Morris and Edith McCurty, and John Doe, business invitee of businesses located on east side of 100 Block of Pendleton Avenue and north side of East 100 Block of North Pendleton Avenue (collectively, "Appellees"). We reverse.

### Issue

Appellants raise one issue, which we restate as whether the trial court erred by granting a prescriptive easement to Appellees because Appellees failed to establish that their use of the property at issue was actual, hostile, open, notorious, continuous, uninterrupted, and adverse for a period of twenty years under a claim of right or with Appellants' knowledge and acquiescence.

### Facts and Procedural History

This lawsuit is the result of a property dispute between Appellants and Appellees

regarding certain property located in downtown Pendleton, Indiana. The property at issue is a paved drive that passes diagonally, i.e., north to northeast, through the center of real property owned by Appellants, and includes parking spaces on both sides of the drive (hereinafter referred to as "Parcel"). Prior to 1977, the Penn Central Transportation Company ("Penn Central") and the Cleveland, Cincinnati, Chicago, and St. Louis Railway Company ("Railroad") were apparently in possession of the Parcel.[1] At that time, the Parcel was used by the public for parking, ingress, and egress.

On August 9, 1977, trustees of Penn Central and the Railroad conveyed the Parcel to Douglas and Mary Downing (the "Downings") via a quitclaim deed, which provides as follows:

ALL THAT PARCEL of land situate [sic] in the Town of Pendleton, County of Madison, and State of Indiana being Lot 37 and part of Lots 35, 36, 38 and 39 and part of an alley in the Original Plat of said Town, bounded and described and designated Parcel # 1 according to a plan of a survey made by John H. Manship & Associates dated June 3, 1977 as follows, viz:

BEGINNING at a point on the West line of Broadway said point being South 90 degrees West, 1,384.85 feet and South 00 degrees and 10 minutes East, 20 feet from the Northeast corner of the Northwest quarter of Section 21, Township 18 North, Range 7 East, and running thence South 00 degrees and 10 minutes East, 369.9 feet along said West line of Broadway, then South 89 degrees and 40 minutes West, 30 feet, thence South 00 degrees and 10 minutes East, 40 feet to the North line of State Street, thence South 89 degrees and 40 minutes West, 198.5 feet along said North line of State Street, thence North 20 degrees, 37 minutes and 40 seconds East, 363 feet to the West line of Lot 36 in the Original Plat of the Town of Pendleton, thence North 00 degrees and 10 minutes West, 38.6 feet along said West line, thence South 68 degrees and 45 minutes East, 24.7 feet, thence North 19 degrees and 55 minutes East, 46.28 feet to a point being 20 feet South of the centerline of Water Street, thence North 90 degrees and 00 minutes East, 59.05 feet to the place of beginning.

\* \* \* \* \* \*

THIS DEED is delivered by Grantor and accepted by Grantee upon the understanding and agreement that should any claim adverse to title hereby quitclaimed be asserted and/or proved, no recourse shall be had against the Grantor.

Appellants' App. at 455 (capitalization in original). This quitclaim deed was recorded on October 21, 1977.

On October 18, 1977, the Downings executed a quitclaim deed to Pendleton Savings and Loan Association ("Bank"), thereby giving Bank a security interest in the Parcel. Pursuant to the quitclaim deed, Bank agreed to return the deed to the

---

1. Chain of title to the Parcel prior to 1977 is unclear. On March 26, 1888, William and James Irish conveyed a right-of-way to the Indianapolis and Bellfountain Railroad "for so much of said rail road as may pass through that following described piece of parcel on a lot of land to wit: south of the west half of the section 16, 18, 7, 100 and 60 acres to the tract on which the falls are situated in Fall Creek Township." Appellants' App. at 450; see also Tr. at 17. Abstractor Patricia Plumber ("Plumber") testified that this right-of-way is directly north of, and does not include, the Parcel. Plumber also testified that she searched the grantor-grantee indexes as far back as 1827 and was unable to discover a deed for the Parcel.

Downings "upon payment by them in full of the purchase price."[2] *Id.* at 452. On January 3, 1986, Bank's successor-by-merger, First Indiana Federal Savings Bank, conveyed a Corporate Warranty Deed for the parcel to the Downings.

On January 24, 2001, the Downings conveyed a portion of the Parcel, consisting of Lots 38 and 39, to Jeff and Connie McKay (the "McKays"), who operate a business known as "Grandma's Treasures" on property adjacent to the Parcel. Thereafter, the McKays posted "no parking" signs on the Parcel, which provided that:

> EFFECTIVE APRIL 1, 2001
> THIS PARKING LOT
> RESERVED FOR
> PATRONS VISITING
> GRANDMA'S TREASURES
> *ALL OTHERS WILL BE TOWED AT OWNER'S EXPENSE 24 HOURS A DAY* .

*Id.* at 463 (emphasis and capitalization in original).

On June 25, 2002, Appellees filed an amended complaint for declaratory relief to establish a prescriptive easement to, and to prevent interference in their use of, the Parcel. On May 8, 2003, the trial court conducted a bench trial to determine whether Appellees acquired a prescriptive easement to the Parcel. On May 28, 2003, the trial court entered judgment in favor of Appellees and ordered the McKays to remove their "signs posted to prohibit parking." *Id.* at 9. This appeal ensued. Additional facts, including those pertinent to the parties' use of the Parcel, will be provided as necessary.

## Discussion and Decision

### I. Standard of Review

Our standard of review for findings of fact and conclusions thereon is governed by Indiana Trial Rule 52, which provides that "[o]n appeal of claims tried by the court without a jury ... the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." This Court engages in a two-tiered standard of review when applying this standard. *Ballard v. Harman*, 737 N.E.2d 411, 416 (Ind.Ct.App. 2000), *reh'g denied.* First, we consider whether the evidence supports the findings and, in so doing, we construe the findings liberally in support of the judgment. *Id.* Findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. *Id.* Next, we determine whether the findings support the judgment. A judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it. *Id.* In applying this standard, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* Rather, we consider the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.*

### II. Analysis

On appeal, Appellants argue that the trial court's grant of a prescriptive easement in favor of Appellees was clearly erroneous because Appellees failed to demonstrate that their use of the Parcel satisfied the elements of a prescriptive easement. Prescriptive easements are not favored in the law and, thus, in Indiana, the party claiming one must meet stringent requirements. *Corp. for Gen. Trade v. Sears*, 780 N.E.2d 405, 410 (Ind.Ct.App.

**2.** The quitclaim deed from the Downings to Bank is similar in spirit to a mortgage; however, unlike a traditional mortgage, in the present case—via the quitclaim deed at issue—Bank actually acquired title to the Parcel.

2002). A prescriptive easement is established by actual, hostile, open, notorious, continuous, uninterrupted, adverse use for twenty years under a claim of right, or by continuous adverse use with the knowledge and acquiescence of the servient owner. *Bauer v. Harris,* 617 N.E.2d 923, 927 (Ind. Ct.App.1993), *abrogated on other grounds, Consol. Rail Corp. Inc. v. Lewellen,* 682 N.E.2d 779 (Ind.1997); *see also* Ind.Code § 32–23–1–1 ("The right-of-way, air, light, or other easement from, in, upon, or over land owned by a person may not be acquired by another person by adverse use unless the use is uninterrupted for at least twenty (20) years."). Continuity of use for the requisite twenty-year period may be established by tacking from the use of predecessors in title. *DeShields v. Joest,* 109 Ind.App. 383, 387, 34 N.E.2d 168, 170 (1941).

■ The existence of a prescriptive easement is a question of fact. *Ballard,* 737 N.E.2d at 418. The party asserting the prescriptive easement has the burden of showing each element "as a necessary, independent, ultimate fact, and the failure to establish any one of such elements is fatal." *Sears,* 780 N.E.2d at 410.

In the present case, Appellants maintain that the trial court's grant of a prescriptive easement to Appellees was clearly erroneous because Appellees failed to establish each of the elements necessary to sustain their claims for a prescriptive easement. We agree. Indeed, there are at least three different theories under which the trial court's grant of a prescriptive easement to Appellees proves to be erroneous.

■ First, we observe that immediately after the McKays purchased their interest in the Parcel, they posted "no parking" signs in an effort to exclude Appellees' use of a portion of the Parcel. Prior to January 24, 2001, the McKays had no right to restrict or prohibit Appellees' use of the Parcel because the McKays did not have a property interest in the Parcel. Accordingly, the prescriptive period did not even begin to run, as against the McKays, until January 24, 2001. As such, Appellees have failed to demonstrate that they have used the portion of the Parcel owned by the McKays continuously for a period of twenty years.[3] Thus, the trial court erroneously granted Appellees' claims for a prescriptive easement.

■ Second, and assuming that the trial court granted Appellees' claims for a prescriptive easement to the Parcel for the twenty-year period preceding the McKays' ownership,[4] we note that prior to 1977, evidence regarding the chain of title to the Parcel is clearly lacking. Apparently, the railroad did not have a valid deed to the Parcel.[5] Prior to 1977, the Railroad likely

---

3. We note that an adverse possessor of land, albeit in fee simple or by easement, may not tack the servient owner's knowledge and acquiescence of the possessor's use of the land with that of the owner's predecessor(s)-in-interest's for purposes of proving use of the land for the twenty-year prescriptive period. Rather, such possessor may only tack the use of his or her predecessor(s) in title, i.e., the preceding adverse possessor(s).

4. However, we recognize that "[r]ecord title is the highest evidence of ownership and is not easily defeated." *McCarty v. Sheets,* 423 N.E.2d 297, 300 (Ind.1981).

5. Moreover, we observe that the record does not demonstrate that the Railroad had marketable record title to the Parcel pursuant to Indiana Code Section 32–20–3–1, which provides that:

> A person who has an unbroken chain of title of record to an interest in land for at least fifty (50) years has a marketable record title to that interest, subject to section 2 of this chapter. A person is considered to have this unbroken chain of title when: (1) the official public records disclose a title transaction of record that occurred at

acquired title in the Parcel through adverse possession; however, the evidence before us does not definitively demonstrate that the Railroad's possession of the parcel was actual, visible, open and notorious, exclusive, under a claim of ownership, hostile to the record owner, and continuous for the statutory ten-year period.[6] *King v. Wiley*, 785 N.E.2d 1102, 1108 (Ind.Ct.App. 2003) (citing the elements necessary to support a claim for adverse possession), *trans. denied.*

■ In any event, on August 9, 1977, the Railroad conveyed the Parcel to the Downings via a quitclaim deed. A quitclaim deed is "[a] deed that conveys a grantor's complete interest or claim in certain real property but that neither warrants nor professes that the title is valid." BLACK'S LAW DICTIONARY 424 (7th ed.1999). Thus, the quitclaim deed from the Railroad to the Downings conveyed only the interest or estate that the Railroad held in the Parcel at the time of execution. *See, e.g., Enderle v. Sharman*, 422 N.E.2d 686, 695 (Ind.Ct.App.1981). Accordingly, because the Railroad did not have a deed to the Parcel, and assuming that it had not adversely possessed the Parcel prior to 1977, the quitclaim deed from the Railroad to the Downings conveyed only a claim of right to the Parcel.

■ On October 18, 1977, the Downings gave Bank a security interest in the Parcel via a quitclaim deed. On January 3, 1986, Bank's successor-in-interest delivered to the Downings a Corporate Warranty Deed to the Parcel. Unlike a quitclaim deed, a warranty deed is a deed that "guarantees the grantor's good, clear title and that contains covenants concerning the quality of title [to the property,] including warranties of seisin, quiet enjoyment, right to convey, freedom from encumbrances, and defense of title against all claims." BLACK'S LAW DICTIONARY 424 (7th ed.1999). However, the holder of a quitclaim deed, i.e., Bank, may not alter the strength of its interest in real property merely by converting a quitclaim deed into a warranty deed in a subsequent conveyance.[7] Accordingly, the Corporate Warranty Deed did not convey to the Downings any greater interest in their title to the Parcel than

least fifty (50) years before the time the marketability is determined; and

(2) the title transaction purports to create an interest in:

(A) the person claiming the interest; or

(B) a person from whom, by one (1) or more title transactions of record, the purported interest has become vested in the person claiming the interest;

with nothing appearing of record purporting to divest the claimant of the purported interest.

Here, the evidence does not reveal that the Railroad has an unbroken chain of title of record to the Parcel for a period of fifty years.

6. The record before us does not demonstrate that the City of Pendleton owned the Parcel prior to the Railroad's possession of it, such that ownership of the Parcel reverted back to the City, by operation of law, when the Railroad's use of the Parcel ended. However, we observe that Indiana Code Section 32–21–7–2 provides that: "Title to real property owned by the state or a "political subdivision" (as defined in IC 36–1–2–13) may not be alienated by adverse possession." Indiana Code Section 36–1–2–13 defines the phrase political subdivision as a "municipal corporation or special taxing district." The City of Pendleton squarely fits within this definition. Thus, if the City had owned the Parcel subsequent to the Railroad's possession of it, neither Appellants nor Appellees could claim an adverse ownership or right of use in the parcel.

7. However, such conversion may alter the holder's liability in the property. For example, if the holder of a quitclaim deed conveys a warranty deed in such property, the holder has transferred only the property interest conveyed by the quitclaim deed, but has potentially conferred upon the subsequent owner the warranties, guaranties, and covenants contained with the warranty deed.

that conveyed via the original quitclaim deed.[8]

From the time that they acquired the Parcel from the Railroad in 1977 to the time that they conveyed it to the McKays, the Downings have paid taxes on the land, have financed a majority of the monetary amount required to pave the Parcel, have had speed bumps and a stop sign placed on the Parcel, and, in response to complaints by customers, have patched potholes. In addition, the Downings have procured liability insurance on the Parcel and have had vehicles towed away that had parked on the Parcel for "a long, long, long time." Tr. at 198. Further, the Downings have leased a portion of the Parcel to: (1) other neighboring businesses; (2) a company for a billboard sign; and (3) the City. Moreover, Indiana Gas paid the Downings two thousand dollars for an easement to the Parcel. The evidence demonstrates that, during the twenty-four years that they possessed the Parcel, the Downings used the land for personal, employee, and customer parking, ingress, and egress.

Accordingly, the record demonstrates that in 1987, the Downings would have adversely possessed the Parcel because their possession was actual, visible, open, and notorious as evidenced by their use of the Parcel and the fact that others complained to them for maintenance and general upkeep of the Parcel. In addition, the Downings' possession was exclusive as evidenced by the fact that they paid taxes on the Parcel pursuant to Indiana Code Section 32–21–7–1, insured the Parcel, and leased out portions of the Parcel. The Downings possessed the Parcel under a claim of ownership, i.e., the quitclaim deed. Moreover, their possession was hostile to the record owner and continuous for the statutory ten-year period. Because fee simple title vests in adverse possession by operation of law at the moment the requisite conditions for adverse possession have been established, the twenty-year period required for a prescriptive easement did not commence, as against the Downings, until 1987 and will not vest until 2007. *See, e.g., Marathon Petroleum Co. v. Colonial Motel Prop., Inc.,* 550 N.E.2d 778, 782 (Ind.Ct.App.1990). Accordingly, the trial court's grant of a prescriptive easement to Appellees was erroneous.[9]

Third, even assuming that the Railroad transferred superior title of the Parcel to the Downings, such that the Downings' ownership in the Parcel immediately vested in 1977, the trial court's grant of a prescriptive easement in favor of Appellees was still erroneous because Appellees have failed to demonstrate the elements necessary to establish their respective prescriptive easement claims. As previously mentioned, to successfully maintain a claim for a prescriptive easement, the party claiming the easement must establish that his or her use of the property at issue was actual, hostile, open, notorious, continuous, uninterrupted, ad-

---

**8.** Further, we observe that the Downings are not bona fide purchasers for value because they had actual knowledge of the quitclaim deed. *See, e.g., Coons v. Baird,* 148 Ind.App. 250, 257, 265 N.E.2d 727, 731–32 (1970) (Because a quitclaim deed conveys only the estate or interest held by grantor at the time of its execution, such a conveyance executed after the grantor has parted with title vests no interests or title in the quitclaim grantee. However, there is an exception to this rule when the grantee is a bona fide purchaser for value without actual or constructive notice of the rights of third persons.)

**9.** Even assuming that the Corporate Warranty Deed, executed in 1986, conveyed to the Downings superior title to the Parcel, the twenty-year prescriptive period did not and will not vest until 2006. As such, the trial court's grant of a prescriptive easement was erroneous.

verse, for a period of twenty years, under a claim of right or with the knowledge and acquiescence of the servient owner. *See Bauer*, 617 N.E.2d at 927. In the present case, to determine whether the trial court erred by granting a prescriptive easement to Appellees, we must examine each Appellee's claim individually.[10]

### A. Appellees Company, John Doe, and the McCurtys

Initially, we observe that there is absolutely no evidence in the record regarding Appellee Company and the extent to which it adversely used the Parcel, if at all. Accordingly, the trial court's grant of a prescriptive easement to Company was clearly erroneous.

 Similarly, the record is devoid of any evidence regarding the continuous use of the Parcel for the prescriptive period by John Doe, business invitee of businesses located on the east side of 100 Block of Pendleton Avenue and the north side of East 100 Block of North Pendleton Avenue. Occasional use of a piece of property by a business invitee is not sufficient to establish a prescriptive easement in favor of the invitee. *But see Bauer*, 617 N.E.2d at 929 ("[W]hen a business owner directs members of the public, as customers, to patronize his business by using

property which he claims a right to use, that commercial use may be attributed to the business owner and supports his claim to a prescriptive easement.") Here, the evidence does not reveal whether business invitee John Doe used the Parcel continuously for a twenty-year period and, if so, whether such use was actual, hostile, open, notorious, continuous, uninterrupted, and adverse under a claim of right. Indeed, the record demonstrates, at best, that unidentified invitees of several adjacent businesses sporadically used the Parcel for parking, ingress, and egress while they patroned the adjacent businesses. This evidence is insufficient to support the trial court's grant of a prescriptive easement in favor of John Doe. As such, the trial court's grant of a prescriptive easement to John Doe was clearly erroneous.

 Appellees Morris and Edith McCurty (the "McCurtys") have also failed to establish a prescriptive easement over the Parcel because they have not shown that their use of the Parcel was continuous over a twenty-year period. The evidence regarding the McCurtys' use of the Parcel, which is located directly behind their house and adjacent business, demonstrates that the McCurtys have used the Parcel for ingress and egress since the time that they purchased their house in 1988.[11] The

---

10. At trial, many witnesses testified that during the Railroad's possession of the Parcel, the public at large commonly used the Parcel for parking, ingress, and egress. This evidence, however, is insufficient to establish a prescriptive easement, in part, because Indiana Code Section 8–3–15–1 provides that:

> The use by the public (of the) right of way or depot grounds of any railroad in this state by riding, driving or walking thereon, shall not ripen into a right to continue to do so even though it has been so used for a period of twenty (20) years or more; nor shall such use be evidence of a grant to do so except where such use is made across such ground to connect a street or highway

on each side thereof, and except where a court of competent jurisdiction has adjudged the existence of a street or highway.

11. Mr. McCurty testified that the Parcel, while convenient, is not the only means of ingress and egress to and from his house and business. We note that an easement of necessity will be implied only when "there has been a severance of the unity of ownership of a tract of land in such a way as to leave one part without access to a public road." *Cockrell v. Hawkins*, 764 N.E.2d 289, 292 (Ind.Ct. App.2002). Accordingly, to demonstrate that an easement of necessity should be implied, a plaintiff must establish both unity of title at the time that tracts of land were severed from

record does not disclose the use, if any, of the Parcel by the McCurtys' predecessor(s)-in-interest. As such, the prescriptive period pertinent to the McCurtys' use of the Parcel did not commence until 1988 and would not vest until 2008. Because the twenty-year prescriptive period has not yet ended, the McCurtys have failed to establish a prescriptive easement.[12] As a result, the trial court committed clear error when it granted a prescriptive easement of the Parcel to the McCurtys.

### B. *Appellee Judy's Claim for a Prescriptive Easement*

■ The evidence regarding Dale Judy's ("Judy") claim of a prescriptive easement also fails to demonstrate use of the Parcel for the requisite twenty-year period. Judy, i.e., the owner of Donnie's Old Oak Tavern (the "Tavern"), testified that he has leased the property on 105 East State Street since 1995. During that eight-year period, Judy "grated out" an area of the Parcel and replaced it with "three triaxle loads of gravel," provided money to cover the cost of patching pot holes, and had snow removed from the Parcel. Tr. at 36. Further, at trial, Judy testified that he told his customers and delivery drivers to utilize the Parcel for parking purposes. *See, e.g., Bauer,* 617 N.E.2d at 927 (holding that commercial use of property by customers, which occurs at the direction of the business owner, may support the business owner's claim for a prescriptive easement).

The record reveals that Judy's predecessor-in-interest, Donald Spencer ("Spencer"), owned and operated a business known as "Pendle Pub," where the Tavern is presently, from 1983 to 1993. Tr. at 162. Spencer testified that, during this ten-year period, he, his employees, and his customers, at his direction, generally used the Parcel for parking.[13] In addition, Spencer testified that, at one time, he contributed one thousand dollars to help repave the Parcel.

■ It is axiomatic that to establish continuity of use by tacking, one must establish a chain of title for the entire twenty-year period and establish each predecessor in title's use of the alleged right-of-way. *Sears,* 780 N.E.2d at 411. Here, assuming arguendo that a lessee of an adjacent property may acquire an interest in the servient property via a prescriptive easement, Judy has failed to show that his use of the Parcel, tacked with that of Spencer's, was for a period of twenty years.

Moreover, Judy has failed to demonstrate that his use of the Parcel was hostile and adverse to Appellants' use. In particular, Judy has failed to show that he lacked permission to use the Parcel from the owner. *See, e.g., Wolfe v. Gregory,* 800 N.E.2d 237, 240 (Ind.Ct.App.2003) (holding that plaintiff's use of the road was not adverse or hostile when plaintiff's predecessor-in-interest had permission from the

one another and the necessity of the easement. To the extent, if any, that the McCurtys sought an easement by necessity over the Parcel, they have failed to demonstrate unity of title and necessity of easement.

**12.** At trial, Mr. McCurty testified that, as a child, he used the Parcel to get to and from the park and that, as an adult, he would sometimes use the Parcel for parking purposes when he patroned the adjacent businesses, "which wasn't very often." Tr. at 87.

These vague recollections are clearly insufficient to establish a continuous and adverse use of the Parcel for the twenty-year prescriptive period.

**13.** Spencer also testified that when neighboring business Old Trail Restaurant had "chicken specials," his customers would have to find parking elsewhere because of the demand on the Parcel. Tr. at 165.

owner to use the road). For example, Spencer's testimony that he contributed one thousand dollars to help repave the Parcel, demonstrates that his use of the Parcel was not adverse to the Downings' ownership. In addition, Judy has failed to prove that his use of the Parcel was to the owner's exclusion. Accordingly, the trial court's grant of a prescriptive easement in favor of Judy was clearly erroneous.

### C. Owens's Claim for Prescriptive Easement

The evidence regarding G. Douglass Owens's ("Owens") use of the Parcel is likewise insufficient to establish a prescriptive easement. The record reveals that, in 1973, Owens purchased an apartment building adjacent to the Parcel and directed his tenants to utilize the Parcel for parking, ingress, and egress. In 1976, Owens acquired a second building adjacent to the Parcel, which is presently occupied by the Tavern. Subsequently, in 1987, Owens purchased a third building, which he used for a restaurant. Owens testified that he told his customers to use the Parcel for parking, ingress, and egress.

However, Owens, who is an attorney, also testified that he represented the Downings when they purchased the Parcel and, as a consequence, knew that the Downings had a deed to the alley or Parcel. In addition, Owens testified that he prepared the lease documents for a building owned by the Downings and that, in so doing, he advised the Downings to exclude the Parcel from the lease because the Downings "didn't have good title to it." [14] Tr. at 140. However, Defendant's Exhibit A demonstrates that, on November 20, 1987, Owens prepared a lease agreement for the Downings regarding a portion of the Parcel. Owens also testified that, in

response to Mr. Downing's request, he made a contribution toward the cost of paving the Parcel. Owens further acknowledged that parking on the Parcel was on a "first-come, first-serve" basis. Tr. at 158.

Assuming that the Downings acquired title to the Parcel in 1977, Owens has successfully demonstrated that he, and his tenants and customers at his direction, used the Parcel for the twenty-year prescriptive period, i.e., from 1973 to 1993. However, the evidence fails to demonstrate that Owens's use of the Parcel was adverse and hostile to that of the Downings, i.e., the title owners. Adverse use has been defined as a "use of the property as the owner himself would exercise, disregarding the claims of others entirely, asking permission from no one, and using the property under a claim of right." *Carnahan v. Moriah Prop. Owners Ass'n,* 716 N.E.2d 437, 442 (Ind.1999) (quoting *Nowlin v. Whipple,* 120 Ind. 596, 598, 22 N.E. 669, 670 (1889)). Here, Owens's testimony does not indicate that he used the Parcel under a claim of right. To the contrary, Owens testified that, because he represented the Downings in the purchase of the Parcel from the Railroad, he knew that the Downings had a deed to, and therefore some interest in, the Parcel.

Moreover, the evidence indicates that Owens's use of the Parcel for parking, ingress, and egress was consistent with the Downings' use and enjoyment of the subject property. When use of the servient property is "not inconsistent with the rights of the owner of the fee in [his or her] use and enjoyment, the presumption is that such use[ ] is permissive, and not adverse." *Monarch Real Estate Co. v.*

---

**14.** At trial, the Downings waived the attorney-client privilege with respect to certain transactions.

*Frye,* 77 Ind.App. 119, 133 N.E. 156, 159, (1921). Because Owens's use of the Parcel was permissive, the use was not adverse or hostile.[15] *See, e.g., Wolfe,* 800 N.E.2d 237, 240. Rather, our review of the record reveals that Owens had, at most, a license—not an easement—to use the Parcel for parking, ingress, and egress. *See Contel of Ind., Inc. v. Coulson,* 659 N.E.2d 224, 228 (Ind.Ct.App.1995) ("Unlike an easement or right-of-way, a license merely confers a personal privilege to do some act or acts on land without conveying an estate in the land."), *reh'g denied, trans. denied.* Accordingly, the trial court's grant of a prescriptive easement in favor of Owens was clearly erroneous.

For the foregoing reasons, we reverse the trial court's grant of a prescriptive easement to Appellees.

Reversed.

RILEY, J., and DARDEN, J., concur.

**J.H., Appellant–Respondent,**

v.

---

15. At trial, Owens testified that parking on the Parcel was "first-come, first-serve." Tr. at 158. From this testimony, one may discern that, at times, the Downings' use of the parcel was restricted by that of Appellees. However, the record does not indicate that the Downings were continuously restricted from using the Parcel for the prescriptive period.

