FILED

Sep 30 2025, 9:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court





IN THE

# Court of Appeals of Indiana

Philip K. Brown, et al.,
*Appellants-Plaintiffs*

v.

The Charles Sturdevant Post of the American Legion Post #46,
et al.,

*Appellees-Defendants*

---

September 30, 2025

Court of Appeals Case No.
25A-PL-513

Appeal from the Tipton Circuit Court

The Honorable Lori N. Schein, Special Judge

---

**Opinion by Judge DeBoer**
Chief Judge Altice and Judge Pyle concur.

**DeBoer, Judge.**

## Case Summary

[1] Believing it was the rightful owner of a grassy, thirty-foot by fifty-foot parcel of land behind its building in Tipton, the Charles Sturdevant Post of the American Legion Post #46 ("the Legion") built a fence around it in 2013. It later added a patio to the area and used the space to host its members for different activities. In July 2024, almost three years after acquiring a property behind the Legion, Philip and Therese Brown sued the Legion and its Commander, Timothy Ehman, for ejectment and trespass on the basis that they legally owned the fenced in area. The Legion filed a counterclaim to quiet title by adverse possession.

[2] Both parties filed motions for summary judgment. The Browns also filed a motion to strike Ehman's affidavit that the Legion offered in support of summary judgment. The trial court denied the Browns' motions and granted the Legion's motion for summary judgment, finding the Legion acquired the parcel by adverse possession. The Browns appeal, asserting the trial court erred in granting the Legion's motion for summary judgment and abused its

discretion in denying their motion to strike. Finding no reversible error, we affirm.

## Facts and Procedural History

[3] Since at least 1999, the Legion has owned property on the block where its clubhouse currently sits. A 1999 survey shows the Legion owned a significant portion of the property on this block, including what is now the Browns' property. In 2001, the Legion sold one of its parcels to Douglas Speer. The property was then conveyed multiple times between 2001 and 2021.[1] The Browns purchased the property from Brent Schmitt in November 2021.

[4] In the summer of 2013, the Legion sought and obtained a permit to build a fence around a thirty-foot by fifty-foot area that it mistakenly believed was on its property but was actually located on the Browns' (then owned by Russell Dulworth). The fence was completed by the end of that year, and the Legion subsequently added a concrete patio and patio furniture for the use of its members. The disputed area has been under the Legion's exclusive control since the erection of the fence in 2013.

[5] In the summer of 2023, Ehman, the Legion Commander since 2022, approached the Tipton Plan Commission about building a structure on the disputed property. Ehman was informed that the Legion was not the legal

---

[1] Douglas Speer conveyed the property to Robin Dulworth in 2002; Robin Dulworth conveyed the property to Russell Dulworth in 2005; Russell Dulworth conveyed the property to CitiMortgage, Inc. in 2016; and CitiMortgage conveyed the property to Brent Schmitt in 2017.

owner of that property. Ehman then sought the property records from the Tipton County Auditor's Office and was again told by the Tipton Surveyor that the Legion did not own the disputed property.

[6] On July 24, 2024, the Browns sent the Legion a cease-and-desist letter insisting that the Legion stop "trespassing or taking any activity on" their property. Appellant's Appendix Vol. 2 at 51. Five days later, the Browns filed their complaint against the Legion seeking damages for its alleged trespass. The Legion filed its answer denying it had trespassed on the Browns' land, and it asserted a counterclaim to quiet title based on adverse possession. The Browns moved for partial summary judgment on the issue of trespass. The Legion then filed a cross-motion for summary judgment on the Browns' claims and its counterclaim and submitted, amongst other exhibits, an affidavit by Ehman to support its motion. The Browns subsequently filed a motion to strike Ehman's affidavit, which the trial court denied.

[7] After a hearing on the parties' summary judgment motions in February 2025, the trial court denied the Browns' motion for partial summary judgment and granted the Legion's motion for summary judgment. The order granted the Legion fee simple absolute title to the disputed area. The Browns appeal the grant of summary judgment in the Legion's favor and the denial of their motion to strike.

## Discussion and Decision

### 1. Motion to Strike

[8] The Browns contend the trial court abused its discretion in denying their motion to strike certain portions of paragraphs seven and seventeen of Ehman's affidavit.

[9] The admissibility of evidence is subject to the broad discretion of the trial court. *Webb v. City of Carmel*, 101 N.E.3d 850, 856-57 (Ind. Ct. App. 2018). That discretion includes "rulings on motions to strike affidavits on the grounds that they fail to comply with the summary judgment rules." *Id.* at 857. We find a trial court has abused its discretion only when its decision "'is clearly against the logic and effect of the facts and circumstances before it.'" *Id.* (quoting *Morris v. Crain*, 71 N.E.3d 871, 877 (Ind. Ct. App. 2017). "[T]he trial court's decision will not be reversed unless prejudicial error is shown." *Five Star Roofing Sys., Inc. v. Armored Guard Window & Door Grp., Inc.*, 191 N.E.3d 224, 234 (Ind. Ct. App. 2022), *reh'g denied*.

[10] Indiana Trial Rule 56(E) provides, in pertinent part, that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

[11] The Browns assert that certain statements made by Ehman in paragraphs seven and seventeen of his affidavit should have been stricken because they were "not

based on [his] personal knowledge." Appellant's Br. at 20. Those statements are:

> The Legion has owned and maintained its property at 129 Independence Street, Tipton, IN 46072 since the 1980s, where it has a clubhouse. While at one time the Legion is believed to have owned the entire block, the Legion has continuously owned [the 129 Independence Street property] for the duration of this time. . . . While the warranty deed identified the lot sold to Speer as extending 110 feet south of its northern boundary, it has always been understood by the Legion that the real-world boundary between the Legion's property and the property Speer acquired was located at a line that is now understood to be approximately 80 feet south of Speer's (now the Plaintiffs') property's northern boundary. As a result, ever since the 2001 sale, the Legion has operated as if the boundary line between the properties is 30 feet to the north of what Tipton County GIS records now show.

>     \* \* \*

> Prior to going to the Tipton Planning Commission, I did not know (and the Legion did not know) that the Legion was not the deeded owner of the land at issue in this case. It was our understanding through years of institutional knowledge[] that the Legion owned the land which it had enclosed with a fence. I recall members regularly using the grass yard for several decades prior to the Legion's decision to build a fence.

Appellant's App. Vol. 2 at 102, 104.

[12] However, based upon our analysis of adverse possession in Part 2, we find it unnecessary to determine whether those statements should have been stricken

because, even if improper, the inclusion of those statements amounted to harmless error. In applying the Indiana Appellate Rule 66(A) harmless error rule, "we consider the likely impact of the improperly admitted . . . evidence on a reasonable, average [trier of fact] in light of all the evidence in the case." *Hayko v. State*, 211 N.E.3d 483, 492 (Ind. 2023), *reh'g denied, cert. denied.* "Ultimately, the error's probable impact is sufficiently minor when—considering the entire record—our confidence in the outcome is not undermined." *Id.*

[13] In looking at the entire record here, we find the probable impact of the contested statements on the trial court's decision to be minor in light of the evidence, and the Browns' subsequent concessions, showing the Legion's control, intent, notice, and term of adverse possession from 2013 to the initiation of this matter. Any impropriety in the inclusion of the contested portions of Ehman's affidavit, upon which the Browns rely only to contest the Legion's control of the property prior to 2013, does not undermine our confidence in the outcome in this case. Thus, any error by the trial court in failing to strike the statements was harmless, and the Browns fail to show that the denial of their motion to strike was prejudicial error.[2] *See* Ind. Appellate

---

[2] We further note that these statements are largely cumulative of other designated materials establishing the Legion's adverse possession, specifically its answers to the Browns' interrogatories, which the Browns did not seek to strike. In answering interrogatory eleven, the Legion stated that:

> The Post has utilized the disputed land for recreational activities since the construction of its building in the late 1980s. Since this time, Post members have regularly grilled, eaten meals, and congregated in the disputed area. Members also regularly smoke in the disputed area[.] . . . Believing itself to be the rightful owner of the disputed area, and feeling that privacy from

Rule 66(A) ("No error or defect in any ruling or order or in anything done or omitted by the trial court or by any of the parties is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.").

## 2. Adverse Possession

[14] The Browns argue that the trial court erred in finding that the Legion adversely possessed the disputed property and granting summary judgment on that basis.

[15] We review the trial court's summary judgment decision de novo and apply the following standard: "summary judgment is appropriate where, drawing all reasonable inferences in favor of the non-moving party, the designated evidence shows 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celebration Worship Ctr., Inc. v. Tucker*, 35 N.E.3d 251, 253 (Ind. 2015) (quoting Ind. Trial Rule 56(C)). A material fact is one that "would affect the outcome of the case," and genuine issues are those that require the factfinder "to resolve the parties' differing accounts of the truth[.]" *Id.* (quoting *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009)). It is the moving party's burden to prove there is no genuine issue

---

neighboring residential buildings would be beneficial, the Post sought and acquired a fence permit . . . in 2013[.]

Appellant's App. Vol. 2 at 93. "In general, the admission of evidence that is merely cumulative of other evidence amounts to harmless error as such admission does not affect a party's substantial rights." *In re Paternity of H.R.M.*, 864 N.E.2d 442, 450-51 (Ind. Ct. App. 2007).

of material fact. *Id.* at 762. As the party whose motion was granted in this case, the Legion carries that burden.

[16] To successfully quiet title on a claim of adverse possession, the adversely possessing party must prove the following elements by clear and convincing evidence:

> (1) Control – The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land . . .;
>
> (2) Intent – The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner . . .;
>
> (3) Notice – The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control . . .; and
>
> (4) Duration – [T]he claimant must satisfy each of these elements continuously for the required period of time[.]

*Fraley v. Minger*, 829 N.E.2d 476, 486 (Ind. 2005). The possessor must satisfy each element continuously for ten years. *Id.* at 484; Ind. Code § 34-11-2-11. Additionally, under Indiana Code section 32-21-7-1(a), the adverse possessor must "pay[] all taxes and special assessments that the adverse possessor reasonably believes in good faith to be due on the real property" during the relevant period. However,

[a] governmental entity or an entity exempt from federal income taxation under Section 501 of the Internal Revenue Code may claim title to real property by adverse possession without having paid all taxes and special assessments due on the real property during the period of adverse possession if an adjacent property owned by the entity was exempt from the payment of property taxes and special assessments during the period of adverse possession.

I.C. § 32-21-7-1(b).

[17] The Legion, through its exhibits accompanying its summary judgment motion, proved that there was no genuine question of fact that it satisfied the elements above. In 2013, the Legion constructed a fence on the disputed property, which demonstrated its intent to claim full ownership of the property, sufficiently provided constructive notice to the legal owner, and showed the Legion's control of the disputed property was exclusive to all others. The Legion's continued use of the property after 2013 up to the initiation of this suit in July 2024—building a patio, adding patio furniture, and opening up the space to its members for activities—further proves such elements. Furthermore, the Legion is a tax-exempt organization under section 501 of the Internal Revenue Code and thus, was not required to prove a good faith belief that it was paying property taxes on the disputed property. I.C. § 32-21-7-1(b). Even so, the Legion did present evidence—and the Browns do not contest on appeal—that it paid the assessments owed on its property from 2013 up to the time of this suit and had a good faith belief that the payment of those assessments included the disputed property. *See* Appellant's App. Vol. 2 at 104.

[18] We note that the Browns concede on appeal that the Legion met the elements of control, notice, and intent by building the fence and continuing to use the space thereafter. *See* Appellant's Br. at 12. They specifically state that "[s]ince completion of the fence, a patio was constructed inside the fence and has been under the exclusive possession and control of the Legion." *Id.* at 8. They also present no argument contesting the Legion's evidence that it paid the necessary assessments.

[19] The Browns only challenge the duration requirement. They assert that "the Legion's possession of the disputed area was not continuous from December 31, 2013 to December 31, 2023 because the Browns' property was conveyed on numerous occasions from 2013 to 2023 and the Legion was unable to meet the ten-year statutory requirement against any one owner." *Id.* at 12. The Browns' primary assertion is not one related to a dispute of material fact but rather what the law requires to prove adverse possession—namely, whether the ten-year durational period for a successful claim of adverse possession requires that the ten-year period be proven as to one legal owner. It is only upon clarification of what the law requires that a genuine issue of material fact could arise in this case. Thus, we turn to the question of whether the duration requirement for adverse possession must be met against one legal owner.

[20] The Browns direct us to a footnote in *Downing v. Owens*, 809 N.E.2d 444, 450 n.3 (Ind. Ct. App. 2004), *trans. denied*. In *Downing*, the trial court found a prescriptive easement was created across property owned by multiple legal owners over the requisite twenty-year prescriptive easement period. *Id.* at 449.

A panel of this Court reversed based in part on its finding that the twenty-year period only began to run against the then-current record owners when they acquired the servient property, and it had not been twenty years since they acquired the property. *Id.* at 450. Thus, the dominant property owners "failed to demonstrate that they [] used the portion of the Parcel owned by the [then-current record owners]" for the requisite period. *Id.* The court supported this conclusion with the following footnote:

> We note that an adverse possessor of land, albeit in fee simple or by easement, may not tack the servient owner's knowledge and acquiescence of the possessor's use of the land with that of the owner's predecessor(s)-in-interest's for purposes of proving use of the land for the twenty-year prescriptive period. Rather, such possessor may only tack the use of his or her predecessor(s) in title, i.e., the preceding adverse possessor(s).

*Id.* at 450 n.3.

[21] The Browns claim that this footnote requires us to find that the Legion's period of adverse possession spanning four different record owners of the disputed property was insufficient because it did not reach ten years against any one owner. We disagree.

[22] First, while we respect the decisions of other panels of this Court, Indiana does not recognize horizontal stare decisis. *In re F.S.*, 53 N.E.3d 582, 596 (Ind. Ct. App. 2016); *see* Ind. Appellate Rule 65(D). "Thus, each panel of this Court has coequal authority on an issue and considers any previous decisions by other panels but is not *bound* by those decisions." *In re C.F.*, 911 N.E.2d 657, 658

(Ind. Ct. App. 2009) (emphasis in original). Rather, the decisions of other panels are persuasive. We do not find the Browns' reliance on a footnote, especially a footnote lacking any citation to legal authority, particularly persuasive.

[23] Second, a review of the footnote's language, specifically "knowledge and acquiescence," indicates to us that the *Downing* footnote is more appropriately limited to prescriptive easements. 809 N.E.2d at 450 n.3. Our case law, *Downing* included, shows that "*a prescriptive easement* is established by actual, hostile, open, notorious, continuous, uninterrupted, adverse use for twenty years under a claim of right, or by continuous adverse use *with the knowledge and acquiescence of the servient owner*." *Id.* at 450 (emphasis added); *see Shields v. Taylor*, 976 N.E.2d 1237, 1246 (Ind. Ct. App. 2012); *Capps v. Abbott*, 897 N.E.2d 984, 988 (Ind. Ct. App. 2008); *Roberts v. Feitz*, 933 N.E.2d 466, 481 (Ind. Ct. App. 2010); *Nodine v. McNerney*, 833 N.E.2d 57, 69 (Ind. Ct. App. 2005), *clarified on reh'g*, *trans. denied*; *Bass v. Salyer*, 923 N.E.2d 961, 968-69 (Ind. Ct. App. 2010). The owner's "knowledge and acquiescence" is thus one possible avenue for proving the existence of *a prescriptive easement*. *Downing*, 809 N.E.2d at 450 n.3. [3]

[24] The Browns direct us to no case law in which such language is used in conjunction with proving an adverse possession claim. We find this

---

[3] Because the issue of a prescriptive easement is not before us in this appeal, we do not pass upon the accuracy of the *Downing* footnote as it applies to the twenty-year period applicable to prescriptive easements.

unsurprising given *Fraley's* clarification of the elements of adverse possession a year after the *Downing* decision. Nowhere in *Fraley* does our Supreme Court require consideration of the owner's knowledge and acquiescence of the use of the property. While the notice element requires proof that the possessor's actions were sufficient so as to provide either "actual *or* constructive notice to the legal owner" of the possessor's intent *to exclusively control* the property, *Fraley*, 829 N.E.2d at 486 (emphasis added), that is not the same as requiring proof that the legal owner *knew and acquiesced to a use* of the property. The mindset of the legal owner is immaterial in a claim of adverse possession. Rather, the elements of adverse possession focus on the actions of the adverse possessor and the continuity of those actions.

[25] We are further persuaded by the result in *Fraley* as well as the decision in *Wetherald v. Jackson*, 855 N.E.2d 624 (Ind. Ct. App. 2006) because both contemplate tacking against the predecessors in interest of the owner seeking to quiet title. In *Fraley*, the trial court granted the Mingers' claim to quiet title by adverse possession. 829 N.E.2d at 480. Fraley acquired the disputed property from a previous owner in 1996. *Id.* The trial court concluded that "[t]he Mingers exercised actual, visible, notorious, and exclusive possession of the disputed tract of real estate under a claim of ownership hostile *to [Fraley and his] predecessors* in title for a continuous period of more than ten years prior to filing the law suit [sic] herein." *Id.* at 481 (emphasis added). It further concluded that "[t]he statute of limitations was not stayed even if the [prior legal owners] and others in title were unaware of [the Mingers' claim of] ownership." *Id.* at 482.

In upholding the trial court's conclusion that the elements of adverse possession had been satisfied, our Supreme Court stated:

> As to duration, the trial court found that the Mingers' actual, visible, notorious, exclusive, and hostile ownership of the disputed tract continued from 1956 to the date of trial in 2002, thus establishing control, intent, and notice during a continuous period exceeding the ten-year statute of limitations.

*Id.* at 488. Despite there having been multiple legal owners of the disputed property since 1956, and the fact that had Fraley only owned the property since 1996 (only six years before the lawsuit), the Court found that the evidence showed the ten-year duration element was met by the Mingers. There was no explicit or implicit requirement that the Mingers had to meet the ten-year period entirely against any *one* legal owner to prove the duration element.

[26] *Wetherald* produced an even clearer result. There, the Jacksons purchased their waterfront property, Lot 67A, in 1988. 855 N.E.2d at 628. At that time, the Strahls owned Lot 66. *Id.* The Strahls incorrectly informed the Jacksons that a portion of Lot 66 was a part of the Jackson's lot, 67A. *Id.* Thus, the Jacksons, believing it to be theirs, used that additional area and their lot recreationally during the summers. *Id.* They made improvements on their lot that encroached on the disputed area, including a dock, deck, boat lift, and retaining wall. *Id.* In 1995, Wetherald purchased Lot 66 from the Strahls. *Id.* Until 2004, he never objected to the Jacksons' use of the disputed area. *Id.* However, after a property dispute with the family in 2004, Wetherald filed a claim to quiet title as to the disputed area, and the Jacksons filed a counterclaim for

declaratory judgment of adverse possession. *Id.* at 629. In its review of the elements of adverse possession, a panel of this Court held that:

> Given our conclusion that the Jacksons proved the elements of control, intent, and notice by clear and convincing evidence, we need only observe that the Jacksons proved that they began to openly possess the transfer area in 1988. Therefore, title by adverse possession passed to the Jacksons in 1998[.]

*Id.* at 640-41.

[27] There was no requirement for the Jacksons to establish adverse possession as to either *only* Wetherald or *only* the Strahls. The Jacksons possessed the area adverse to the Strahls for only seven years and Wetherald for only nine, yet the court found the duration element satisfied. Thus, it was only in combining the terms of adverse possession against successive legal owners that the Jacksons met the ten-year requirement in *Wetherald*.

[28] The Browns assert we should disregard *Wetherald* because "the issue of tacking against a servient owner was not raised by the parties" and "the Court of Appeals did not address the issue." Appellant's Br. at 16. They contend then that "*Downing* is therefore good law and should control in this case." *Id.* Again, we do not agree.

[29] As discussed above, we are bound by neither *Downing* nor *Wetherald*. However, we find *Wetherald* more persuasive, particularly in light of the context in which the *Downing* footnote was offered, the established elements of adverse possession, and the *Fraley* decision. We are therefore persuaded that Indiana

law does not require the ten-year durational element of adverse possession to be met as against one legal owner and reject the Browns' argument otherwise.

[30] Having come to a conclusion on the law, we turn to the facts. The Browns do not challenge the fact that the Legion proved the other elements of adverse possession, at the latest, beginning in 2013. As noted above, the Browns admit that "[s]ince completion of the fence, a patio was constructed inside the fence and has been under the exclusive possession and control of the Legion." Appellant's Br. at 8. The Legion sought and obtained the permit to build the fence around the disputed property, completed the fence that same year, and continued to use the space for its patrons through 2023. Thus, the ten-year period was satisfied.

[31] The Browns assert that the Legion did not present sufficient evidence of adverse possession of the disputed area prior to 2013. However, given that the elements of adverse possession were clearly and convincingly proved from 2013 to the initiation of this matter, any question as to the Legion's possession of the disputed property prior to 2013 is immaterial. Therefore, we find there is no genuine issue of material fact as to whether the Legion proved the requisite elements for its adverse possession claim and the trial court did not err in granting the Legion summary judgment on such grounds.

## Conclusion

[32] Finding the trial court did not err in granting the Legion's motion for summary judgment and any error in denying the Browns' motion to strike to be harmless, we affirm.

[33] Affirmed.

Altice, C.J., and Pyle, J., concur.


ATTORNEY FOR APPELLANTS

Zechariah D. Yoder
Adler Attorneys
Noblesville, Indiana


ATTORNEYS FOR APPELLEES

Gregory A. Schrage
Peter J. Hutson
Church Church Hittle + Antrim
Noblesville, Indiana