**DAISY FARM LIMITED PARTNER-SHIP, Appellant–Plaintiff,**

v.

**Michael and Jill MORROLF, Appellees–Defendants.**

No. 43A03–0905–CV–229.

Court of Appeals of Indiana.

Oct. 9, 2009.

Brian J. Paul, Jenny R. Wright, Ice Miller LLP, Indianapolis, IN, Attorneys for Appellant.

Stephen R. Snyder, Randall L. Morgan, Snyder, Birch & Morgan, Syracuse, IN, Attorneys for Appellees.

## OPINION

FRIEDLANDER, Judge.

This is the second time this dispute between Daisy Farm Limited Partnership and Michael and Jill Morrolf concerning the ownership of land has come before us. In this iteration, Daisy Farm appeals the trial court's decision upon remand that Daisy Farm did not acquire title by adverse possession of a triangular-shaped parcel of land deeded to the Morrolfs. Daisy Farm presents the following restated issue for review: Did the trial court err in concluding that Daisy Farm failed to prove all of the elements necessary to take title to the disputed property by adverse possession?

We affirm.

The basic facts of this case were set out in the first appeal of this matter, as follows:

Daisy Farm and the Morrolfs own adjoining lots of land in Cripplegate Heights, a neighborhood located at the south end of Lake Tippecanoe in Kosci-usko County, Indiana. Daisy Farm owns Lot 12. Immediately to the east of Lot 12 is the Morrolfs' property, Lot 13. The property lines of Lots 12 and 13 meet Tippecanoe Lake at an angle. Both Daisy Farm and the Morrolfs have cottages on their lots overlooking the lake to the north, and both maintain piers extending from their property out into the lake.

Each lot has approximately thirty-three feet of frontage along the lake, and a long sidewalk and grassy area known as "Lake Boulevard" runs across both properties between the cottages and the lake by virtue of a thirty-foot-wide public easement. Also, subsequent to the recording of the original plat for Cripplegate Heights in 1903, lot owners added fill to the area north of Lake Boulevard and thus created a new tract of land outside the boundaries of the plat of Cripplegate Heights. On December 31, 1938, the Kosciusko Circuit Court entered a judgment ("1938 Judgment") confirming the rights of the public over Lake Boulevard and declaring an easement over and across the new tract of land in favor of lot owners in Cripplegate Heights. Thus, both Daisy Farm and the Morrolfs acquired title expressly subject to "easements of the General Public and Lake Boulevard." Concrete sidewalks run on either side of Lot 12 and "T" into Lake Boulevard. A sea wall is built between Lake Boulevard and the new tract of land.

On February 21, 2002, Gary and Annitra Chappell, Daisy Farm's predecessors in interest to Lot 12, brought suit against the Morrolfs to quiet title in the lot. When the Chappells sold Lot 12 to Daisy Farm in May 2003, Daisy Farm was substituted for the Chappells in the litigation.

After a bench trial, the trial court entered findings of fact and conclusions of law in support of its determination that (1) the parties' riparian rights are consistent with the lots' property lines, and (2) Daisy Farm failed to show that it acquired a portion of Lot 13 by adverse possession.

*Daisy Farm Ltd. P'ship v. Morrolf*, 886 N.E.2d 604, 606 (Ind.Ct.App.2008) (*Daisy Farm I* ) (internal citation to record omitted), *trans. denied.* The following diagram depicts the property, with Daisy Farm's lot (Lot 12) designated with lighter shading and the Morrolfs' lot (Lot 13) designated with darker shading: [1]

North ↑

In *Daisy Farm I*, Daisy Farm appealed the trial court's judgment determining "that (1) the parties' riparian rights are consistent with the lot's property lines, and (2) Daisy Farm failed to show that it acquired a portion of Lot 13 by adverse possession." *Id.* We affirmed the trial court's ruling with respect to Daisy Farm's riparian rights and that issue is not before us in this appeal. With respect to the second issue, in *Daisy Farm I*, Daisy Farm appealed the trial court's ruling that it had failed to acquire "a narrow, triangular area located in the platted lines of Lot 13 that begins between the cottages and runs north to the lake." *Id.* at 608. For ease of reference, we will refer to this strip of land, which is the same area disputed in this appeal, as "the triangular area." The triangular area is depicted as the blackened area in the following diagram:

1. Due to software limitations, we have shaded only the center portion of each lot. The horizontal lines demarcating the top and bottom of the shaded areas have been inserted by us and are of no legal or factual significance. They, along with the shading itself, do not appear on the map submitted in the record from which this diagram was duplicated. The shading is inserted strictly for the reader's convenience.

North →

In *Daisy Farm I,* the trial court determined that, as a matter of law, Daisy Farm failed to show intent (which is the modern incarnation of the exclusivity element of former adverse possession law) because other people, including other lakefront owners and the general public, exercised an easement across the north portions of Lot 13. This determination was based upon certain findings accompanying the trial court's decision that Daisy Farm had not established intent, which we reproduce here because they recount other facts that are relevant to this appeal:

19. The testimony and other evidence introduced at trial that the real estate north of Lots 12 through 33 in Cripplegate Heights as extended to the water's edge of Tippecanoe Lake was historically used since at least 1951 in a non-exclusive manner by adults and children alike, including recreational uses across such real estate along the sidewalk and land north of the sidewalk on Lake Boulevard, the beach areas along the shore of Tippecanoe Lake, and the

piers placed at the shore of Tippecanoe Lake.

20. A lakefront resident since 1951 testified in detail as to the non exclusive uses over time without restrictions by the general public, including the other lakefront and non-lakefront residents in Cripplegate Heights, across all of the real estate comprising Lake Boulevard and north of Lake Boulevard to the water's edge of Tippecanoe Lake.

21. A non-lakefront resident in Cripplegate Heights since 1973 testified that she routinely accessed that area north of Lots 12–33 in Cripplegate Heights as extended to the water's edge of Tippecanoe Lake and observed over time the uses of such real estate by the public. With respect to that portion of Daisy Farm and Morrolf Real Estate north of Lots 12 and 13 as extended to the water's edge of Tippecanoe Lake, she further testified as to the "free passage" that existed across such real estate, that she had never been told not to use such real estate, that she was unaware of anyone being told not to use such real

estate, and that no one prevented her uses of such real estate.

22. No one has historically taken any action to prevent any person from using any portion of the real estate north of Lots 12 through 33 in Cripplegate Heights as extended to the water's edge of Tippecanoe Lake.

23. The non-exclusive historical uses of the real estate north of Lots 12 and 13 are consistent with those non-exclusive historical uses of the real estate north of Lots 13 and 14 in Cripplegate Heights as extended to the water's edge of Tippecanoe Lake considered by this Court [in a 1996 ruling that Lake Boulevard "was set apart for purposes of ornament, exercise, and amusement" and that lakefront landowners cannot obstruct the use of Lake Boulevard by others . . . .]

*Id.* at 609 (footnote omitted).

Upon appeal, we concluded that the trial court erred in determining that Daisy Farm was prohibited from acquiring a portion of Lot 13 "on the basis that they, along with other Cripplegate owners and the general public, had the right to use northern portions of the lot as a thoroughfare and/or beach area." *Id.* at 611. We held that, in order to determine whether the doctrine of adverse possession applied, the trial court was required to determine whether Daisy Farm and/or its predecessors in title exerted sufficient control, intent, notice, and duration *in addition to* the permitted use under the easement. We remanded with instructions to make the determination whether Daisy Farm had presented sufficient evidence to prove all of the elements of an adverse possession claim.

Finally, in *Daisy Farm I,* we addressed the trial court's determination that Daisy Farm could not prevail on its adverse possession claim because neither it nor its predecessors paid taxes on the triangular area. We held that in so doing, the trial court erroneously determined that Daisy Farm could not prevail merely on the basis that "neither Daisy Farm nor its predecessors paid taxes on the disputed section." *Id.* at 610. Citing Ind.Code Ann. § 32–21–7–1 and *Fraley v. Minger,* 829 N.E.2d 476 (Ind.2005), we noted that the law " 'permits substantial compliance to satisfy the requirement of the adverse possession tax statute in boundary disputes where the claimant has a reasonable and good faith belief that the claimant is paying the taxes during the period of adverse possession.' " *Daisy Farm Ltd. P'ship v. Morrolf,* 886 N.E.2d at 611 (quoting *Fraley v. Minger,* 829 N.E.2d at 493). On this point, we remanded to the trial court to determine whether Daisy Farm and its predecessors substantially complied with I.C. § 32–21–7–1.

On April 22, 2009, considering the same evidence upon which the original judgment was rendered, the trial court issued its findings of fact and conclusions of law, including the following pertinent provisions:

2. To the extent necessary to clarify this Court's prior judgment dated May 4, 2007, the Court specifically finds and confirms that Daisy Farm failed to establish under the evidence presented at trial the "control," "intent," "notice" and "duration" elements of adverse possession for reasons independent of the public's *right* to use a portion of the Morrolf Real Estate at issue derived from the plat of Cripplegate Heights and/or the 1938 Judgment.

3. To the extent necessary to clarify this Court's prior judgment dated May 4, 2007, and based upon the evidence presented at trial, the Court finds, consistent with other findings and conclusions herein, that the lakefront and non-

lakefront residents in Cripplegate Heights, as well as the public in general, engaged in numerous non-exclusive uses and activities throughout the area north of Lots 12 and through 33 in Cripplegate Heights as extended to the water's edge of Tippecanoe Lake, and such uses and activities as applicable to the subject real estate were sufficient to preclude Daisy Farm's acquisition of title by adverse possession to that limited portion of the Morrolf Real Estate at issue.

4. With respect to that portion of the Morrolf Real Estate at issue, and based upon the evidence presented at trial, the Court finds that Daisy Farm and its predecessors in title failed to exert "sufficient control, intent, notice, and duration in addition to the permitted use" by others derived from any rights under the plat of Cripplegate Heights and/or the 1938 Judgment [2] to enable Daisy Farm to acquire title by adverse possession to any such portion of the Morrolf Real Estate. *See Daisy Farm*, 886 N.E.2d at 611 ("The trial court was required to determine whether Daisy Farm and/or its predecessors in title exerted sufficient control, intent, notice, and duration in addition to the permitted uses under the easement.").

5. There are two distinct areas of the Morrolf Real Estate at issue. Lake Boulevard as depicted in the plat of Cripplegate Heights lies between the north line of the Morrolfs' Lot 13 and a stone seawall to the north. This limited real estate is comprised of a sidewalk and grassy area north of the sidewalk leading to the seawall. North of the seawall is a beach area that actually fronts on Tippecanoe Lake. That beach area north of platted Lake Boulevard, including the Morrolfs' beach area, was the principal subject addressed in the 1938 Judgment.

6. With respect to that portion of the Morrolf Real Estate **north** of the seawall (i.e., the Morrolfs' beach area), the Court finds that Daisy Farm failed to present any evidence, much less clear and convincing evidence, establishing each element of the claimed adverse possession. Instead, Daisy Farm's evidence as to possession or control of any portion of the Morrolf Real Estate at issue extended only up to the seawall and such evidence as further addressed herein was in dispute and subject to being weighed by this Court. Consistent with the Court's finding in this regard, when asked about any "lines of occupation" evident in that portion of the Morrolf Real Estate north of the seawall (i.e., the Morrolfs' beach area), Daisy Farm's surveyor at trial testified that he could not recall any "obvious line that stood out."

7. That portion of the Morrolf Real Estate **north** of the seawall (i.e., the Morrolfs' beach area) is subject to an easement in favor of other lot owners in Cripplegate Heights established under

2. The 1938 Judgment provided, in pertinent part:

After said land was platted and lots sold in Cripplegate Heights and improvements made thereon, the defendants, owners of such lots, from time to time deposited earth on and near the South shore of said lake and north of the north line of said Lake Boulevard and by such gradual filling made a tract of dry land north of the north line of Lake Boulevard, and improved the same with lawns, shrubbery, sea walls and other improvements; that such tract of dry land made by such gradual filling in by the defendants is the real estate described in plaintiff's complaint.

*Id.* at 8. The court went on to hold that the general public had an easement and right of travel over the filled area, from Lake Boulevard to the water's edge, and that, subject to said easement, the land owners owned the land.

the 1938 Judgment. To the extent necessary to clarify this Court's prior judgment dated May 4, 2007, and based upon this Court's consideration of the evidence presented at trial, the Court specifically finds that Daisy Farm failed to present sufficient evidence that it or its predecessors in title possessed, controlled or otherwise used any portion of the Morrolf Real Estate north of the seawall (i.e., the Morrolfs' beach area) in a manner that exceeded the use granted to other Cripplegate owners and the general public. *See Daisy Farm,* 886 N.E.2d at 610 (the Court of Appeals acknowledging that *Naderman v. Smith,* [512 N.E.2d 425 (Ind.Ct.App.1987) ] is applicable in this case to prevent a permitted use from ripening into fee simple ownership through adverse possession "if the use by Daisy Farm and its predecessors does not exceed the use granted to other Cripplegate owners and the general public").

8. With respect to that portion of the Morrolf Real Estate at issue **south** of the seawall, including platted Lake Boulevard, the Court notes that conflicting evidence was presented with respect to Daisy Farm's claimed adverse possession. To the extent necessary to clarify its judgment dated May 4, 2007, and based upon this Court's consideration of the conflicting evidence presented at trial, the Court finds, consistent with other findings and conclusions herein, that Daisy Farm failed to establish by clear and convincing evidence the "control," "intent," "notice" and "duration" elements of adverse possession over that portion of the Morrolf Real Estate at issue.

9. Daisy Farm was further required to prove payment of all taxes and special assessments due on the Morrolf Real Estate at issue for the requisite time period in accordance with Indiana's adverse possession tax statute, IC § 32–21–7–7, and *Fraley v. Minger,* 829 N.E.2d 476 (Ind.2005). To the extent necessary to clarify this Court's prior judgment dated May 4, 2007, and based upon this Court's consideration of the conflicting evidence on the issue presented at trial, the court finds that Daisy Farm failed to prove that it paid the applicable real estate taxes due on that portion of the Morrolf Real Estate at issue in compliance or substantial compliance with IC § 32–21–7–1 and as contemplated in *Fraley, supra.*

*Appellant's Appendix* at 21–23 (footnote supplied) (emphasis in original). Pursuant to the foregoing findings, the trial court granted judgment in favor of the Morrolfs on grounds that Daisy Farm failed to establish all of the elements necessary to prevail on its adverse possession claim. Daisy Farm contends the trial court erred in so ruling.

When reviewing claims tried without a jury, giving due regard to the trial court's ability to assess the credibility of the witnesses, we will not set aside the findings and judgment unless they are clearly erroneous. Ind. Trial Rule 52(A). A judgment is clearly erroneous when there is " 'no evidence supporting the findings or the findings fail to support the judgment' " and when the trial court applies the wrong legal standard to properly found facts. *Fraley v. Minger,* 829 N.E.2d at 482 (quoting *Chidester v. City of Hobart,* 631 N.E.2d 908, 910 (Ind.1994)). Findings of fact are reviewed under the clearly erroneous standard, but we do not defer to the trial court's conclusions of law, which are reviewed de novo. *Fraley v. Minger,* 829 N.E.2d 476. In cases that present mixed issues of fact and law, we apply an abuse of discretion standard. *Id.* " 'In order to determine that a finding or conclusion is clearly erroneous, an appellate court's re-

view of the evidence must leave it with the firm conviction that a mistake has been made.'" *Id.* at 482 (quoting *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind.1997)). Our Supreme Court has determined that a heightened quantum of proof, i.e., clear and convincing evidence, is required to establish adverse possession. *See Fraley v. Minger*, 829 N.E.2d 476. In reviewing such a judgment, we must determine whether a reasonable trier of fact could conclude the judgment was established by clear and convincing evidence. *Id.* In so doing, we will neither reweigh the evidence nor re assess witness credibility. *Id.*

■ Daisy Farm contends that it proved all of the elements necessary to acquire title to the disputed section of land by adverse possession. The traditional elements of adverse possession descending from the common law required the claimant to prove the possession was (1) actual; (2) visible; (3) open and notorious; (4) exclusive; (5) under claim of ownership; (6) hostile; and (7) continuous for the statutory period. In *Fraley*, our Supreme Court condensed and synthesized those elements to now consist of control, intent, notice, and duration. Those elements were defined as follows:

(1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);

(2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");

(3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,

(4) Duration—the claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

*Fraley v. Minger*, 829 N.E.2d at 486.

At the outset of our analysis, we observe that although the parties present multiple issues bearing on the question of whether Daisy Farm established its claim of adverse possession, we need not address all of them if we conclude that the proof with respect to a particular element is lacking, because the failure to establish any one element of an adverse possession claim defeats the claim. *Fraley v. Minger*, 829 N.E.2d 476. Indeed, this is the course we shall adopt. Thus, we will not address, among other things, the parties' contentions with respect to whether Daisy Farm's description of the disputed land is adequate.

■ It is helpful here to clarify precisely which part of the Morrolfs' property is at issue and what the trial court determined with respect to that part of the Morrolfs' land. As indicated above, we have dubbed this the triangular area. It is located at the northern edge (i.e., the area nearest the lake) of the Morrolfs' property. The triangular area in turn can be thought of as divided into two parts by a seawall located between Lake Boulevard and the waters of Tippecanoe Lake. The area north of the wall is a beach area that abuts the lake. This is the area that was the subject of the 1938 ruling alluded to above. In the instant case, the trial court determined that Daisy Farm failed to present "any" evidence establishing the elements of adverse possession with respect to the

beach area. *Appellant's Appendix* at 22. On appeal, Daisy Farm contends that it "was not required to separately demonstrate the elements of adverse possession as the 'beach area.'" *Appellant's Brief* at 28. In essence, Daisy Farm contends that the areas north and south of the beach seawall should not be considered as separate for this purpose, and that proof of adverse possession with respect to the area south of the wall was sufficient to establish the same with respect to the beach area.

With respect to the area south of the seawall, as instructed by this court, the trial court reconsidered the evidence with an eye to determining whether Daisy Farm and/or its predecessors in title exerted sufficient control, intent, notice, and duration in addition to the permitted use under the public easement. *See Daisy Farm Ltd. P'ship v. Morrolf*, 886 N.E.2d 604. In rendering its decision, the court indicated that the evidence pertaining to each element was in conflict, but concluded that Daisy Farm had failed to establish any of the elements of adverse possession.

■ In order to establish the requisite control, the claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land; this element includes the former elements of "actual," and—in some ways—"exclusive" possession. Daisy Farm contends this was accomplished by it and its predecessors in interest by virtue of the placement of a fence, the planting of small hedges, maintenance of the grassy portion of Lake Boulevard, and the planting of a flower bed. With respect to the row of hedges, photos in the record depict two rows of hedges purportedly demarcating the eastern and western boundaries of Daisy Farm's back yard. Daisy Farm points to evidence in the record indicating, or at least suggest-

ing, that the hedges were in place for many years. There is testimony in the record from Paul Young, however, that the eastern row of hedges, i.e., the row between the Daisy Farm and Morrolf lots, was there for only "five years, maybe six." *Appellant's Appendix* at 238. The trial court was free to credit Young's testimony on this factual point of contention, and apparently did. We will not second-guess that determination. If the row of hedges between Daisy Farm's and the Morrolfs' properties was there for only five or six years, then Daisy Farm failed to prove the duration element, i.e., failed to establish the requisite ten-year period for adverse possession, at least with respect to the hedges. The same can be said of the flower garden planted by the Chappells, Daisy Farm's predecessor in interest with respect to Lot 12. That is, there is evidence from which it may be inferred that the flower bed was not there for the requisite ten-year period.

Turning now to the maintenance of the area in question, Daisy Farm contends that its predecessors in interest mowed the triangular area as if they owned it. We note, however, that there was also evidence that Friemuth (Daisy Farm's predecessor in interest) and Bill Jenkins (the Morrolfs' predecessor in interest) occasionally mowed each other's property as a matter of courtesy, as indeed did others in the lakefront community. Again, the evidence was in conflict, but there was evidence to support the conclusion that Friemuth's maintenance of the grass in the triangular area was not hostile to Jenkins's ownership of the triangular area.

We turn finally to Daisy Farm's claim that "[t]he chain-link fences evidencing the lines of possession has [sic] been in place since approximately 1968 or 1969." *Appellant's Brief* at 26. Even assuming that is true, we note that a 2001 diagram depict-

ing the results of a survey of the lots and the portions thereof in dispute reflect that the fence in question lies wholly within the legal boundary of Daisy Farm's property. Thus, with respect to the disputed boundary line and the triangular area, the Morrolfs would have had no cause to dispute its location.

■ In summary, there was conflicting evidence on each of the points to which Daisy Farm cites in support of its argument that it exercised exclusive control over the triangular area beyond that permitted to the general public via the public easement. As indicated above, our standard of review forbids reweighing the evidence or re-assessing witness credibility. *See Fraley v. Minger*, 829 N.E.2d 476. We may not supplant the trial court's assessment of the evidence with ours on the question of whether the proponent of an adverse possession claim has established the elements of his or her case by clear and convincing evidence. *Id.* Even assuming for the sake of argument, however, that Daisy Farm had established the foregoing elements by clear and convincing evidence, we conclude that the claim must fail on the remaining element, i.e., the failure to substantially comply with the payment of taxes.

■ As indicated previously, this case was remanded to the trial court to consider, among other things, whether Daisy Farm and its predecessors *substantially* complied with I.C. § 32–21–7–1. Upon remand, the trial court determined, "[B]ased upon this Court's consideration of the conflicting evidence on the issue presented at trial, the Court finds that Daisy Farm failed to prove that it paid the applicable real estate taxes due on that portion of the Morrolf Real Estate at issue in compliance or substantial compliance with IC § 32–21–7–1 and as contemplated in *Fraley, supra.*" *Appellant's Appendix* at 23. Daisy Farm contends this conclusion is in error because the evidence demonstrates that it and its predecessors in interest sincerely *believed* they were paying taxes on what they *believed* were the legal boundaries of Lot 12, which they *believed* included the disputed triangular area. Implicit in this argument is the contention that the requirement of "substantial compliance" within the meaning of *Fraley* can be satisfied by a good faith showing on the part of the proponent of an adverse possession claim that he or she believed in good faith they were paying taxes on the parcel of land in dispute. Even assuming such a showing would suffice, there is evidence in the record that defeats Daisy Farm's claim of substantial compliance.

A survey conducted in 1995 or 1996 depicted an encroachment of the residence located on Lot 13 onto Lot 12 to the west. In May 1996, Daisy Farm's predecessors in interest, Brad and Katherine Roby, and the Morrolfs' predecessors in interest, William and Betty Jenkins, entered into an encroachment agreement acknowledging their respective ownership of Lots 12 and 13 and providing for the allowable encroachment of a portion of the Lot 13 residence onto Lot 12. That agreement was recorded in the Kosciusko County Recorder's Office. According to records admitted into evidence and the testimony of Susan Stookey, the Plain Township Assessor, the Morrolfs and their predecessors-in-interest always paid the real estate taxes due on Lot 13, including the disputed triangular area, and Daisy Farm and its predecessors-in-interest paid the real estate taxes due on Lot 12. This includes tax payments after the 1996 encroachment agreement was duly recorded. According to the agreement, the subject properties were designated by the parties as Lots 12 and 13, "as ... known and designated on the record Plat of Cripplegate Heights[.]"

*Appellees' Appendix* at 83. The plat thus referenced depicts the same boundaries for those lots that were established in the Morrolfs 2001 survey. Thus, at least as of the date of the encroachment agreement, i.e., 1996, Daisy Farm and its predecessors in interest had constructive notice via the recorded encroachment agreement of the true legal boundaries of Lot 12, and therefore of the boundaries of the land to which their tax payments were applied. As a result, even assuming that an adverse possession claimant's reasonable belief that real estate taxes remitted apply to the triangular area, i.e., the parcel in dispute, Daisy Farm failed to establish by clear and convincing evidence that its belief that it was paying taxes on the disputed triangular area was reasonable.

In summary, Daisy Farm failed to establish that the trial court committed clear error in concluding that Daisy Farm failed to establish all elements of its claim of adverse possession.

Judgment affirmed.

BAKER, C.J., and RILEY, J., concur.